538 P.2d 787
**In the Matter of J. Alfred MAY,**
**Attorney at Law.**
**No. 11890.**

Supreme Court of Idaho.

Aug. 5, 1975.

Lloyd J. Webb, Twin Falls, for May.

Roger D. Ling, Rupert, for Idaho State Bar.

PER CURIAM:

The Board of Commissioners of the Idaho State Bar has recommended to this Court, by a recommendatory order dated March 31, 1975, that J. Alfred May, a licensed attorney, be suspended from the practice of law in this state for a period of not less than twelve months, and be required to pay the costs of the disciplinary proceedings. Pursuant to Rule 168 of the Rules of the Supreme Court and the Board of Commissioners of the Idaho State Bar, Mr. May has petitioned this Court to re-

view the recommendatory order. We affirm and adopt the recommendatory order in part and modify in part.

In the proceedings below a formal hearing was held, in accordance with Supreme Court-Bar Commission Rules 164 *et seq.*, before a Committee on Discipline appointed by the Idaho Bar Commission to consider allegations of professional misconduct on the part of Mr. May in the course of his representation of a client, the complainant Mrs. Joyce Davis. In its Findings of Fact, Conclusions and Recommendations, the Committee on Discipline found that Mr. May had violated Disciplinary Rules 1–102(4), 5–103 and 5–104 of the Code of Professional Responsibility adopted by order of this Court on June 25, 1971. These findings, conclusions and recommendations were approved and adopted by the Board of Commissioners. We find that the record sustains a finding of violation of DR 5–103 and DR 5–104, but find that a violation of DR 1–102(4) was not shown.

In November, 1973, Joyce Davis, an acquaintance and former employee of J. Alfred May, retained him to represent her in a divorce action against her husband. On February 27, 1974, an attempted reconciliation with her husband ended in a heated disagreement and with Mrs. Davis threatening suicide. She was placed in the city jail at the request of her husband supposedly for her own safety. Upon hearing of this development, Mr. May, acting on his own initiative, placed telephone calls to Mrs. Davis, the city prosecutor and a local psychiatrist. Mrs. Davis was released the next morning and, at the request of Mr. May, went directly to his law offices. At that point she was emotionally distraught, tired and discouraged. May advised her that she should go through with the divorce immediately. She agreed, then stated that she was afraid she was going to lose her home because she was in default on the contract payments. As the result of their discussions regarding the default on her home payments, May prepared an assignment of Davis's interest in the home

transferring her equity to him. Most of the proceedings below, and the arguments here on appeal are directed toward the reasons and motivations for May's taking this assignment.

At the disciplinary hearing it was brought out that as of that date, Mrs. Davis had missed only the February payment but that she could not meet the March payment due the following day, the two payments totaling $120.00. She had also allowed the fire insurance to lapse in violation of the contract. Additional debts included an unsecured FHA Home Improvement loan which had been signed by her husband only, and an unsecured promissory note which the Davises had given to the former owners as down payment on the home. Mrs. Davis and her husband had an equity of approximately $3,000.00 in the home, which was estimated by Mrs. Davis to be worth $12,000.00 to $14,000,00. Earlier May had prepared a homestead exemption for Mrs. Davis on the property.

It is unclear from the record how much of these financial details regarding the real property were known to May at the time the assignment was taken. He did have some pertinent data in his file which he had prepared for the divorce proceedings. However, he testified that he did not consult the file when he took the assignment and, out of concern for her emotional state, did not discuss with Mrs. Davis her various obligations and alternatives. Instead, he testified that he offered to take an assignment of the property and to assume the obligations which she was presently unable to meet. She agreed to this proposal.

The day following her release from jail and prior to the court proceedings granting Mrs. Davis a divorce and awarding her the community interest in that property, Mrs. Davis signed documents prepared by May assigning all right, title and interest in the property to J. Alfred May. The precise nature and purpose of the assignment is unclear. The parties did not establish any

terms or conditions at the time it was executed, and communication between them apparently broke down soon afterwards. The assignment appears absolute on its face, but testimony at the hearing reveals extremely confused and conflicting interpretations as to its purpose and effect. May testified initially that although he didn't discuss it with her the day the assignment was executed, he intended that she would get the property back. His later testimony indicated he stood ready and willing to reconvey the property to her if she would pay him the amounts he had expended on the property, but he felt her initial attitude was that she regarded the assignment as final. In his answer to the complaint filed against him, May had stated that he understood that he held the property in a trust capacity and as security for fees. In response to questions put to him by the committee, May testified that he regarded the transaction as one in the nature of an assignment for security for his expenditures on the property and for attorney fees. Mrs. Davis alleged she understood that if she came up with money to make the contract payments and insurance, she would get the property back. She testified that she thought that May would look to her former husband to collect the $350.00 in attorney fees for the divorce. She had given May the title to a 1963 Ford pickup truck, which had been awarded to her husband in the divorce decree, and it was her understanding that May would give the title to her husband upon receipt of the $350.00 for payment of the divorce.[1] Mrs. Davis also claimed she had no knowledge of the attorney fee of $100.00 which May claimed for his efforts on her behalf in connection with her confinement in city jail. Thus, apart from any dispute that she is indebted to May for these amounts, Mrs. Davis did not understand that those fees would also have to be satisfied before she could obtain a reconveyance of the property.

Approximately six weeks after the assignment, Mr. May's attitude toward the property changed. He made payments on the FHA loan which were not Mrs. Davis's personal debts and were not necessary to protect her interest in the property. He and his wife planted some grain and a vegetable garden and began cleaning up the premises. May testified that he did this because he understood that Mrs. Davis did not want the property back. This was disputed by Mrs. Davis who had contacted him in the months of April and May to find out what she could do to obtain a reconveyance. When May and his wife began removing several items of personal property from the premises, Mrs. Davis filed her complaint with the Idaho State Bar.

■ In its Finding of Fact VII, the Disciplinary Committee stated that May had obtained an absolute assignment from Mrs. Davis without explanation of the meaning and consequences of such a document and without consideration. It was further found that at the time May was aware that Mrs. Davis had an equity of approximately $3,000.00 in the property. The Committee concluded that by this conduct, May violated Canon 5, DR 5–104, "in that he engaged in a business transaction with his client, Mrs. Davis, without full disclosure to her of the significance of his conduct . . . ." (Clerk's Tr., pp. 76-77). May claims that the finding that the assignment was without consideration, and the finding that he was aware of the $3,000.00 equity are not supported by the evidence. The presence and adequacy of consideration in this transaction depend on whether the assignment is treated as absolute or for security only. However, these disputed findings are not crucial to the conclusion that May was in violation of

---

1. At the hearing, May reduced this amount to $300.00, acknowledging that Mrs. Davis had paid him $50.00 at the initial divorce interview.

DR 5–104(A). The mandate of this rule·is absolute: absent a full disclosure, an attorney shall not enter into a business transaction with a client where their interests are differing, and where the client looks to the attorney to exercise his professional judgment on behalf of the client. The record is undisputed that there was no full disclosure in this case. Further, Mrs. Davis was emotionally incapable of comprehending the implications of the transaction. Her testimony indicates she looked to May for advice and guidance in helping her solve her problems. He had undertaken to help her with regard to both her divorce and her confinement in jail. The divorce, her emotional problems and her financial problems were so interrelated that the attorney-client relationship existed throughout. We have no reason to doubt Mr. May's assertion that he was acting as a friend in procuring the assignment. However, where an attorney-client relationship exists, the attorney's actions in the name of friendship are also bound by this fiduciary rule. Regardless of whether there was bad intent, the resulting conflict which developed here is the very evil the disciplinary rule was designed to avoid. The conclusion that May violated DR 5–104 is amply sustained by the record.

The findings and conclusion that May violated DR 5–103(A) by acquiring a property interest in the subject matter of litigation is also supported by the evidence. He was acting as counsel to Mrs. Davis in the divorce proceedings in which the ultimate disposition of the equity in the real property was being litigated. The assignment was obtained prior to entry of the divorce decree.

May claims that this transaction falls within the exception set out in DR 5–103(A), allowing an attorney to "[a]cquire a lien granted by law to secure

his fee or expenses." The record does not disclose that this defense was presented to the Committee on Discipline, and appears to be raised for the first time on appeal. The committee's conclusion that May violated DR 5–103(A) is an implicit finding that May did not acquire the assignment· for the purpose of obtaining a lien to secure his fee, and the evidence supports the action of the disciplinary committee. May's testimony on this point was extremely conflicting. He variously stated that he took the assignment to protect Mrs. Davis from foreclosure on the property; to help her as a friend; and at one point to secure expenditures which he had made on behalf of Mrs. Davis and for his attorney fees and other advances, although at another point he stated that the assignment was not taken as security for attorney fees. May's activities after the acquisition of the assignment wherein he began treating the property as his own by planting grain and a garden and making other improvements, removing personal property from it, and giving Mrs. Davis a notice to terminate the premises indicate that he regarded this more as a business transaction than a device to secure his attorney fees. The record supports the committee's determination that May violated DR 5–103(A), and that determination will not be disturbed on appeal.[2]

The Committee further concluded that Mr. May had violated DR 1–102(4), in that his conduct was fraudulent and deceitful toward his client. There was conflicting evidence throughout the proceedings concerning May's intentions, both as to the initial assignment and thereafter. While his actions were ill-advised and fall short of that quantum of professional responsibility required of an attorney, a violation of DR 1–102(4) cannot be sustained without a clear showing of bad intent. In Re

---

2. The exception to DR 5–103(A) permitting an attorney to "[a]cquire a lien granted by law to secure his fee or expenses" would include a lien established by agreement between an attorney and his client with regard to an assignment of property of the client under the provisions of I.C. § 3–205 which provides that "[t]he measure and mode of compensation of attorneys and counselers at law is left to the agreement, express or implied, of the parties, which is not restrained by law."

*Felton,* 60 Idaho 540, 94 P.2d 166 (1939). Mrs. Davis repeatedly testified that she believed he did not intend to deceive or defraud her but was acting as a friend. May himself claims he acted in good faith, intending to help her. The circumstantial evidence relied upon by the Disciplinary Committee to support its finding of fraudulent and deceitful conduct does not meet the requirement of proof by a "clear and undoubted preponderance of the evidence" in disciplinary proceedings. In Re Felton, *supra;* In Re Campbell, 95 Idaho 87, 502 P.2d 1100 (1972). The record does not reveal clear evidence of a fraudulent or deceitful intent and thus we hold that the finding of a violation of DR 1–102(4) cannot be sustained.

In view of our conclusion that not all of the charges can be sustained, the recommendation of the Bar Commission that May be suspended for one year is modified and May is ordered suspended from the practice of law for a period of sixty days and is ordered to pay a fine to the Idaho State Bar in the sum of $2,000.00, together with the costs of these proceedings, which fine shall be used by the Idaho State Bar to defer the expenses of disciplinary proceedings.