816 P.2d 335 (1991)
120 Idaho 379
In the Matter of Gordon W. JENKINS, attorney at law,
IDAHO STATE BAR, Plaintiff,
v.
Gordon W. JENKINS, Defendant.
No. 18646.
Supreme Court of Idaho, Boise, November 1990 Term.
August 7, 1991.
Ward, Maguire & Bybee, Pocatello, for defendant. D. Kirk Bybee (argued).
Michael J. Oths, Idaho State Bar, Boise, for plaintiff.
PER CURIAM.
This attorney disciplinary action is before the Court to consider the findings and recommendation of the Idaho State Bar to impose sanctions on Gordon W. Jenkins, an *336 attorney licensed to practice law in this state, because of actions and conduct of a legal assistant in his employ.
A seven-count complaint was filed against Jenkins by the Idaho State Bar alleging that he had engaged in solicitation practices prohibited by the Idaho Rules of Professional Conduct. The standard procedure prescribed by the Idaho State Bar Commission Rules was followed commencing with the filing of a complaint, investigation by bar counsel, evidentiary proceedings held before a hearing committee and subsequent review by the Board of Professional Conduct prior to the action being presented to this Court on appeal.
The hearing committee heard evidence concerning the complaints against Jenkins and dismissed four counts for either lack of evidence, insufficient foundation or that the actions complained of were approved by court decisions. However, the hearing committee found violations of the Rules of Professional Conduct on three counts and recommended that Jenkins be suspended from the practice of law for three years, with all but two and one-half years to be withheld, subject to reinstatement should any further violations occur during that period.
The Professional Conduct Board reviewed the hearing committee's findings and a divided Board adopted those findings and affirmed the recommended suspension. The members of the Board comprising the majority chose to defer to the hearing committee's findings and recommendation, but also concluded that the findings of the committee were supported by the record and that the proper burden of proof was applied.
Two members of the Professional Conduct Board, the chair, attorney Ron Kerl, and attorney Jerry Wolfe, issued a dissenting minority opinion stating that the circumstantial nature of the evidence did not rise to the required level of clear and convincing proof necessary to support the imposition of the recommended sanctions.
The action is now before this Court for our independent review of the record and assessment pursuant to Rule 511(r) of the Idaho State Bar Commission Rules. The parties have submitted written briefs and counsel have presented oral argument to the Court.

I.

FACTS
The three remaining counts of the complaint filed against Jenkins charge him with violation of two sections of the Idaho Rules of Professional Conduct. In Counts I, II and V Jenkins is charged with solicitation of prospective clients by an agent or employee in violation of Rules 5.3(b)(1) and Rule 7.3 of the Rules of Professional Conduct.
A legal assistant employed by Jenkins' law firm by the name of Francis Landeros is a key figure in the events giving rise to these proceedings. Prior to her employment with Jenkins' law firm as a legal assistant, Landeros was involved in providing social services to members of the Hispanic community in east Idaho. When the funding for that program ceased, Landeros obtained employment with Jenkins' law firm as a legal assistant.
The hearing committee found, and the majority members of the Board accepted, that Gordon Jenkins "... hired Landeros because of her close contacts with the Mexican community and for the sole purpose of bringing in new clients to the firm in the areas of personal injury, workmen's compensation, and immigration." It is in this setting that we review the two incidents involving contact of prospective clients by Landeros. Because of the burden of proof imposed on Jenkins to show that the findings of the hearing committee and the Board are not supported by the evidence, In re Lutz, 100 Idaho 45, 592 P.2d 1362 (1979), we set forth the facts in a light most favorable to those findings.

A. The Martinez Incident  Counts I and II.

On November 29, 1986, Robert Martinez was killed in a motor vehicle accident. Sometime after the fatal accident and prior *337 to December 21, 1986, Landeros contacted Robert's parents, Joe and Mary Martinez, requesting to come to their home and visit with them about their son's death. The record is conflicting as to the nature of Landeros' personal visit to the Martinez home. Mary Martinez testified that she did not want to talk with Landeros and purposely left home at the time of the scheduled appointment because her husband told her Landeros desired to talk with them about suing the owners of the car in which their son was riding at the time of his death. Landeros testified that she was a close friend of the Martinez family and only went to their home to express her condolences.
The hearing committee found that when Mrs. Martinez returned home, Landeros was still in their house visiting with Mr. Martinez about suing the owners of the automobile. The record indicates that Landeros told the Martinez family that Jenkins was the best lawyer in the firm and that he had sent her out to their home to "... see what she could do to help the family." The record indicates that while at their home, Landeros and Mrs. Martinez embraced, cried and prayed together. Following their meeting Landeros left several of Jenkins' business cards with Mr. and Mrs. Martinez. Several days after the December 21, 1986 meeting, Landeros telephoned Mrs. Martinez to inquire whether they had decided to hire an attorney. Subsequently a complaint against Jenkins was filed with the Idaho State Bar.

B. The Barrett Incident  Count V.

In January, 1986, Eileen Barrett was injured in an automobile accident. Mrs. Barrett had been negotiating with an insurance company in an attempt to settle her claim. Barrett's sister, fearing that she might settle for too little compensation, contacted Landeros and requested that she contact Barrett and provide her with legal counsel. Landeros placed several telephone calls to Barrett at her home and place of employment to inquire of the nature of her injuries and indicated that her employer, Gordon Jenkins, could assist her as he had other clients with automobile accident injury claims. Mrs. Barrett agreed to meet with Jenkins. At the conclusion of their consultation appointment Jenkins proposed that Barrett sign several medical consent release forms for convenience purposes even though she had not agreed to formally retain his services. Jenkins advised Barrett that he would destroy the signed release forms if she did not desire to retain him as her attorney.
Mrs. Barrett subsequently obtained the services of another attorney who requested the return of her paperwork. Jenkins returned the documents and in a cover letter advised Barrett's new counsel that even though he had started an investigation into the claim no costs had been incurred and none of the signed releases had been used to obtain medical information. Subsequently, a complaint was filed against Jenkins with the Idaho State Bar for the Barrett incident.

II.

APPLICABLE RULES OF PROFESSIONAL CONDUCT
The Idaho State Bar charges Jenkins with violation of Rules 5.3(b)(1) and 7.3 of the Idaho Rules of Professional Conduct.
Rule 5.3 provides:
Rule 5.3 Responsibilities Regarding Non-lawyer Assistants
With respect to a non-lawyer employed or retained by or associated with a lawyer:
(a) a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;
(b) a lawyer shall be responsible for conduct of such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer if:
(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

*338 (2) the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action. (Emphasis added.)
Rule 7.3 provides:[1]
A lawyer may not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, by mail, in-person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. The term "solicit" includes contact in person, by telephone or telegraph, by letter or other writing, or by other communication directed to a specific recipient, but does not include letters addressed or advertising circulars distributed generally to persons not known to need legal services of the kind provided by the lawyer in a particular matter, but who are so situated that they might in general find such services useful.
It is with the above rules of professional conduct in mind that we review the disciplinary action before us.

III.

BURDEN OF PROOF IN DISCIPLINARY PROCEEDINGS
Over the years a variety of attorney discipline cases have been brought before this Court for review. A careful analysis of the language utilized by the Court in defining the applicable burden of proof reveals consistent application of a "clear and undoubted preponderance" evidentiary standard in the cases. In this decision we will reaffirm the applicable standard of proof required of the State Bar Association, the burden on the respondent attorney on appeal and the Court's role in disciplinary actions.

A. Evidentiary Standard and Burden of Proof at the Hearing Committee and Board Proceedings.

A careful review of this Court's prior holdings in attorney discipline cases indicates long standing and substantial precedent for a burden of proof requiring "clear and undoubted preponderance of the evidence." In the early case of In re Baum, 32 Idaho 676, 186 P. 927 (1920), the Court dismissed the action for discipline and stated:
It may be stated to be a well-settled rule in disbarment proceedings that charges of official misconduct must be established by a clear and undoubted preponderance of the evidence. (In re Sherin, 27 S.D. 232, Ann.Cas. 1913D, 446, 130 N.W. 761, 40 L.R.A., N.S., 801.) (Emphasis added.)
32 Idaho at 678, 186 P. at 928.
Thereafter, in In re Felton, 60 Idaho 540, 94 P.2d 166 (1939), this Court quoted the foregoing language from Baum and held:
Applying the foregoing rule to the facts heretofore set out we are not constrained to hold that Mr. Felton solicited business from Tena Veum (Cole) or sought to induce her to employ him as her attorney to bring an action against Ayer for damages. The testimony supporting such a contention is not clear and undoubted and neither is there a preponderance of evidence to establish it. (Emphasis added.)
60 Idaho at 553, 94 P.2d at 171.
More recently, in another attorney discipline action, In re Campbell, 95 Idaho 87, 502 P.2d 1100 (1972), this Court cited Felton and stated:
This court, in In re Felton, 60 Idaho 540, 94 P.2d 166 (1939), asserted that the burden of proof in a disbarment proceeding requires the charges to be proved by a "clear and undoubted preponderance of the evidence." Judged by the standards we are of the opinion that there was not a clear and undoubted preponderance of the evidence to support the *339 allegation in Count II that Campbell had employed Mr. Tolk as a touter. Mrs. Baxter's admission on cross examination that Tolk could have said that a young attorney was working with him on an estate plan, rather than that he was working for a young attorney, neutralized to a great extent the effect of her testimony on direct examination. Even if not impeached, the testimony of Mrs. Baxter regarding the conversation with Tolk was of questionable admissibility, and was not binding upon Campbell in the absence of clear evidence that Campbell had knowledge and had consented to Tolk's activities. Cf. In re Felton, supra. (Emphasis added.)
95 Idaho at 89, 502 P.2d at 1102.
Further analysis by this Court in subsequent cases emphasizes that there must be a clear showing prior to finding a violation of the rules. In the decision of In re May, 96 Idaho 858, 538 P.2d 787 (1975), the "clear and undoubted preponderance of the evidence" standard of Felton and Campbell was once again affirmed. In May, we stated:
The Committee further concluded that Mr. May had violated DR 1-102(4), in that his conduct was fraudulent and deceitful toward his client. There was conflicting evidence throughout the proceedings concerning May's intentions, both as to the initial assignment and thereafter. While his actions were ill-advised and fall short of that quantum of professional responsibility required of an attorney, a violation of DR 1-102(4) cannot be sustained without a clear showing of bad intent. In re Felton, 60 Idaho 540, 94 P.2d 166 (1939). Mrs. Davis repeatedly testified that she believed he did not intend to deceive or defraud her but was acting as a friend. May himself claims he acted in good faith, intending to help her. The circumstantial evidence relied upon by the Disciplinary Committee to support its finding of fraudulent and deceitful conduct does not meet the requirement of proof by a "clear and undoubted preponderance of the evidence" in disciplinary proceedings. In re Felton, supra; In re Campbell, 95 Idaho 87, 502 P.2d 1100 (1972). The record does not reveal clear evidence of a fraudulent or deceitful intent and thus we hold that the finding of a violation of DR 1-102(4) cannot be sustained. (Emphasis added.)
96 Idaho at 861-62, 538 P.2d at 790-91.
Clear and convincing evidence is required by courts in fact-finding situations to protect important individual interests in civil cases. Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). "Clear and convincing" evidence means a degree of proof greater than a mere preponderance, Molyneux v. Twin Falls Canal Co., 54 Idaho 619, 35 P.2d 651 (1934), and we deem that standard to be synonymous with the "clear and undoubted preponderance" evidentiary standard utilized by this Court in attorney discipline cases for many decades. Therefore, based on well-established precedent, the State Bar must prove by a "clear and undoubted preponderance" of the evidence or by "clear and convincing" evidence that Jenkins approved or ratified Landeros' conduct before his license can be suspended. In re Campbell, 95 Idaho 87, 502 P.2d 1100 (1972); In re Felton, 60 Idaho 540, 94 P.2d 166 (1939); In re Baum, 32 Idaho 676, 186 P. 927 (1920).

B. Standard Before the Supreme Court on Review.

When an attorney disciplinary action is appealed to this Court, several additional rules and standards apply. Initially, we are required to make our own independent review of the record to determine whether the evidence supports the findings. Secondly, the findings of the Board are entitled to great weight. Finally, the burden is on the respondent attorney to show that the findings are not supported by the evidence.
As summarized above, it is well established in attorney disciplinary actions that:
This Court will make its own independent assessment of the record but the findings of the Board are entitled to great weight and the burden is on the *340 respondent attorney to show that the findings are not supported by the evidence. (Emphasis added.)
In re Lutz, 100 Idaho 45, 48, 592 P.2d 1362, 1365 (1979); see also In re Depew, 98 Idaho 215, 560 P.2d 886 (1977); In re Bowen, 95 Idaho 334, 508 P.2d 1240 (1973).
In Lutz, we further explained the role of this Court when reviewing the findings and recommendations of the hearing committee and Board.
While great weight should be accorded the findings and recommendations made below, both the Board and this Court are empowered to reach independent judgment on the record before it. (Citations omitted.)
... .
Since disciplinary matters are judicial and not administrative in nature, the responsibility for assessing the facts and ordering the sanctions to be imposed on an attorney ultimately rests with this Court. In re Bowen, supra; In re Edwards, 45 Idaho 676, 266 P. 665 (1928). (Emphasis added.)
100 Idaho at 49, 592 P.2d at 1366.
As a general principle of law, in our review of cases on appeal from the district courts, the Industrial Commission or agencies, we will not substitute our judgment for that of the fact finder unless the findings are not supported by the evidence or are clearly erroneous. It is well established that this Court's review of a district court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. Johnson v. Edwards, 113 Idaho 660, 747 P.2d 69 (1987); Dalton v. South Fork of Coeur d'Alene River Sewer Dist., 101 Idaho 833, 623 P.2d 141 (1980); Morris v. Frandsen, 101 Idaho 778, 621 P.2d 394 (1980). Jensen v. Siemsen, 118 Idaho 1, 794 P.2d 271 (1990); Spruell v. Allied Meadows Corp., 117 Idaho 277, 787 P.2d 263 (1990) (Industrial Commission cases); I.R.C.P. 52(a). The Idaho Rules of Civil Procedure provide: "In all actions tried upon the facts without a jury ... [f]indings of fact shall not be set aside unless clearly erroneous." I.R.C.P. 52(a). The task of weighing evidence and finding facts is within the province of the trial court and we will not set aside findings made by the trial court unless they are clearly erroneous. Further, we will give due regard to the opportunity of the trial judge to weigh conflicting testimony and to judge the credibility of witnesses. Rueth v. State, 103 Idaho 74, 644 P.2d 1333 (1982); Javernick v. Smith, 101 Idaho 104, 609 P.2d 171 (1980); Roemer v. Green Pastures Farms, Inc., 97 Idaho 591, 548 P.2d 857 (1976). We must accept the trial court's findings of fact if they are supported by substantial, competent though conflicting evidence, however meager. Rueth v. State, 103 Idaho 74, 644 P.2d 1333 (1982); Watkins v. Watkins, 76 Idaho 316, 281 P.2d 1057 (1955). In Rueth we stated: "This standard of appellate review is salutary in effect, and reflects the view that deference must be afforded to the [trial court's] special opportunity to assess and weigh the credibility of the witnesses who appear before it personally." 103 Idaho at 77, 644 P.2d at 136; see also Jensen v. Bledsoe, 100 Idaho 84, 593 P.2d 988 (1979). It follows that the conclusions of the trial court which are supported by the findings of fact will not be disturbed on appeal. Pichon v. L.J. Broekemeier, Inc., 108 Idaho 846, 702 P.2d 884 (Ct.App. 1985).
However, in an attorney disciplinary action we are guided by different legal principles which require our independent review of the record and assessment of the evidence. In addition, in conducting our independent review and assessment of the record we must apply the clear and convincing burden of proof standard historically required in attorney disbarment and disciplinary actions. In re Campbell, 95 Idaho 87, 502 P.2d 1100 (1972); In re Felton, 60 Idaho 540, 94 P.2d 166 (1939); In re Baum, 32 Idaho 676, 186 P. 927 (1920).

C. Circumstantial Evidence.

We agree with the State Bar that an attorney disbarment or disciplinary case may be proved by circumstantial evidence. Klensin v. Board of Governance of Pennsylvania Bar, 312 Pa. 564, 168 A. 474 *341 (1933); Matter of Craven, 267 S.C. 33, 225 S.E.2d 861 (1976); In re Berlant, 458 Pa. 439, 328 A.2d 471 (1974); State v. Martin, 410 P.2d 49 (Okla. 1965); In re Geffen, 14 Cal.3d 843, 537 P.2d 1225, 122 Cal. Rptr. 865 (1975). However, even though circumstantial evidence is sufficient to prove ethical violations, the evidence must be a clear and undoubted preponderance, or clear and convincing, in order to find a violation and to impose sanctions.

IV.
As a preliminary observation, there is no question or doubt that the conduct of Landeros in the Martinez incident constituted blatant solicitation of professional employment from a prospective client clearly in violation of Rule 7.3(a) of the Idaho Rules of Professional Conduct. However, the precise issue presented to us is not whether Landeros' conduct was unethical solicitation, which we deem it to be, but rather as expressly required under Rule 5.3(b)(1) the issue is whether Jenkins "ordered" the conduct, or "with knowledge of the specific conduct involved" ratified the conduct of Landeros.
In order to impose the recommended sanctions, the State Bar must have sufficient clear and undoubted preponderance, or clear and convincing evidence in the record proving that Jenkins either, 1) ordered Landeros as part of her employment to solicit legal work, or 2) ratified Landeros' conduct with knowledge of the specific conduct involved. Idaho Rule of Professional Conduct 5.3(b)(1).
Our independent review and assessment of the record under a clear and convincing evidence standard does not satisfy us that the State Bar has met its burden of proof sufficient to enable us to adopt the findings and recommendations of either the hearing committee or the Board. Were we alone in this assessment of the evidence in the record, we would be concerned. However, the strong dissent by the Chair and another attorney member, has caused us to seriously ponder the weight and sufficiency of the evidence in the record. We have personally read the entire record of these proceedings and are not satisfied that the elements of the allegation that Jenkins either 1), ordered Landeros to solicit legal business from Martinez or Barrett, or 2), with knowledge of Landeros' specific conduct ratified her actions, have been proven under a clear and convincing evidentiary standard.
After carefully analyzing and scrutinizing the entire record before us we are satisfied that if the burden of proof was a preponderance or greater weight of the evidence standard, we would also conclude and find that Jenkins knew or should of known of Landeros' conduct. However when applying the strict burden of "clear and undoubted preponderance" or "clear and convincing" evidence standard, we cannot defer to the findings made by the Board on either the Martinez incident or the Barrett incident.
The comments of the minority dissenting members of the Board best summarizes the sufficiency of the evidence in the record.
To impose sanctions upon Gordon W. Jenkins for the conduct of Francis Landeros, his non-lawyer assistant, the Bar must prove the requirements of 5.3(b)(1) and (2) I.R.P.C. by clear and convincing evidence. Rule 522(f) I.R.P.C. While the evidence in the record is clear and convincing that Francis Landeros carried out in-person solicitation of the Martinez family and Eileen Barrett, which conduct if carried out by a member of the Idaho State Bar would violate Rule 7.3 I.R.P.C., the level of evidence necessary to hold Mr. Jenkins responsible for Francis Landeros' conduct simply does not exist.
With respect to the Martinez matter, there is no evidence that Mr. Jenkins ever knew, prior to the initiation of these proceedings, that Francis Landeros did anything but offer the Martinez family her condolences after their son's death. While Mr. Jenkins knew Ms. Landeros was going to visit the Martinez family, the record is silent about any additional information held by Mr. Jenkins which would show he knew of her specific conduct, as required by Rule 5.3(b)(1), or *342 that he in any manner ordered or ratified that conduct.
While one might characterize Francis Landeros as a loose cannon rolling around the deck of Jenkins' law office, the overwhelming evidence established a firm policy, supported by frequent staff meetings, aimed at educating Mr. Jenkins' non-lawyer staff about impermissible in-person solicitations. This program is precisely the kind of action a lawyer must take to assure himself that the impermissible conduct itself, as well as the consequences of an in-person solicitation can be avoided or mitigated.
With respect to the Eileen Barrett matter, there is no evidence that Mr. Jenkins ever knew of Francis Landeros' repeated phone calls to Ms. Barrett for the purpose of soliciting her as a client for Jenkins' law office and Mr. Jenkins. As the majority points out in its opinion and recommendations, the evidence suggests that Mr. Jenkins was unaware of any conduct on the part of Ms. Landeros before his telephone conversation with Ms. Barrett. While the majority of the Board finds Mr. Jenkins' conduct at the time of his only meeting with Ms. Barrett representative and proof of his ratification of Ms. Landeros' prohibited in-person solicitation of Ms. Barrett, the record does not suggest that conclusion. First, there was no evidence that when Ms. Barrett met with Mr. Jenkins she related to him the nature and scope of Ms. Landeros' prior contacts with her. Secondly, Ms. Barrett testified, at page 91 of the transcript, that she did not tell Mr. Jenkins that she was concerned about feeling pressured to consult with him. How could he ratify conduct of which he was unaware?
The circumstantial evidence necessary to prove Mr. Jenkins' complicity in the Martinez and Barrett solicitations does not rise to the level of clear and convincing evidence necessary to support the imposition of sanctions by the Idaho State Bar and Idaho Supreme Court. I (we) would revise the findings of the hearing committee. (Emphasis in original.)
While great weight should be accorded the findings and recommendations of the hearing committee and Board, we cannot abdicate our responsibility to independently review the record and make our own assessment and judgment of the evidence as traditionally and consistently required of us by case law spanning decades. In re Lutz, 100 Idaho 45, 592 P.2d 1362 (1979); In re Bowen, 95 Idaho 334, 508 P.2d 1240 (1973); In re Baum, 32 Idaho 676, 186 P. 927 (1920). Disciplinary matters are judicial and not administrative nor truly appellate in nature. The responsibility for assessing the facts and ordering the sanctions to be imposed on an attorney ultimately rests with this Court. Accordingly, we decline to adopt the less than unanimous findings and recommendations of the hearing committee or the Board, which we hold are not supported by the evidence.
Having found that there is insufficient evidence in the record to support a finding of violations of Rules 5.3 and 7.3 and to impose the recommended sanctions, it is not necessary that we address Jenkins' legal arguments challenging the constitutionality and alleged vagueness of the various rules involved or that the recommended sanctions were too severe.
Each party to bear its own costs and attorney fees incurred in the hearings and proceedings before the committee and Board.
NOTES
[1] The above Rule 7.3 was rescinded and replaced on March 15, 1990.