930 P.2d 1030

**In The Matter of the Idaho State Bar Proceeding.**

**Nelson M. WARNER, Petitioner,**

v.

**Michael C. STEWART, Respondent.**

**Nelson M. WARNER, Petitioner,**

v.

**Michael J. OTHS, Respondent.**

**No. 22697.**

Supreme Court of Idaho, North Idaho, October 1996 Term.

Jan. 23, 1997.

590

Nelson M. Warner, Naples, FL, pro se.

Catherine L. Dullea, Sandpoint, for respondent Michael C. Stewart.

Michael J. Oths, pro se.

SCHROEDER, Justice.

This is a petition for review pursuant to Idaho Bar Commission Rule (I.B.C.R.) 509(c)(9) by Nelson Warner ("Warner") from two Hearing Committee Decisions to affirm dismissal of his Complaints with the Idaho State Bar. Warner seeks discipline of two attorneys: Michael Stewart for his handling of a real estate transaction in Sandpoint, Idaho, and Michael Oths, Idaho State Bar Counsel, for his handling of the Stewart Complaint. Stewart requests attorney fees pursuant to section 12–121 of the Idaho Code.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Warner and his wife sold an apartment property in Sandpoint, Idaho, to Vito and Marita Simplicio ("Simplicios") in 1984. Vito Simplicio asked Warner if the Simplicios' friend, Michael Stewart ("Stewart"), could act as the closing attorney. Warner agreed. The Simplicios paid Stewart's fees.

The Simplicios made monthly payments to Warner through an escrow account at Intermountain Escrow. In 1985 the Simplicios obtained an ownership interest in the Bonner Escrow Company ("Bonner Escrow"), and the escrow account was moved to Bonner Escrow with Warner's permission. Stewart

was not involved with this transfer. Subsequently, the Simplicios divorced, and Stewart married Marita Simplicio in 1988. She remained an owner of Bonner Escrow.

In 1988 the apartment property was sold to Mr. and Mrs. Faletto ("Falettos") who assumed payment obligations under the purchase and escrow agreements with Warner. Stewart handled the closing at the request of the Falettos.

In May of 1991 the Falettos sold the property to Mr. and Mrs. Bare ("Bares") who assumed payment obligations under the purchase agreement. Stewart again acted as the closing attorney, apparently representing the Falettos. The Bares were not given a copy of the escrow agreement notifying them of their obligation to pay annual escrow fees.

The Bares made timely deposits with Bonner Escrow, but they failed to include an annual escrow fee of $66.60. Warner wrote to Bonner Escrow stating that the Bares had defaulted on the note because they had failed to remit the escrow fee. He directed Bonner not to accept future payments. The Bares wrote to Warner explaining that they were unaware of their obligation to pay the escrow fee and that they had not received a copy of the escrow agreement. The Bares eventually did pay the annual escrow fee, plus a $50.00 default fee, but they refused to pay liquidated damages or late charges.

In August of 1992 Warner wrote a bitter letter to Stewart expressing his dissatisfaction over Stewart's failure to provide the Bares with the escrow agreement and questioning Stewart's competence as an attorney. Warner also intimated that Stewart and his wife, the former Mrs. Simplicio and part owner of the Bonner Escrow, engaged in corrupt business practices involving various conflicts of interest. Warner apparently made these allegations based on his erroneous belief that Stewart had failed to have the parties to the 1984 sale sign an escrow agreement. Warner has since discovered that the escrow documents in the 1984 sale were in fact signed and not blank as he had supposed. Warner threatened to file a complaint with the Idaho State Bar ("ISB") seeking disciplinary investigation.

Stewart responded with a letter to Warner. He admitted that he had failed to provide the Bares with escrow instructions but claimed that this was a mere oversight on his part and did not involve any corrupt motivations. Stewart took exception to Warner's remarks about his wife's business ethics, invited Warner to file a complaint with the ISB, and concluded with a personal observation that he believed Warner to be "a jerk." Stewart sent a copy of this letter to the Bares.

On September 19, 1992, Warner wrote to Stewart expressing his belief that Stewart's alleged negligence had caused Warner to declare the Bares in default when he had no legal justification for doing so, apparently based on the fact that Stewart had not intervened during the Warner/Bare escrow fee misunderstanding. Warner noted that he expected more from "our attorney" and signed the letter "your alleged client."

Stewart wrote to Warner saying that he was not his attorney and that after consulting his client index cards had found that he had not represented Warner as a "principal" since January of 1985. Stewart also told Warner to direct any further comments to the ISB.

Warner sent a Letter of Complaint to the ISB in October of 1992, alleging Stewart violated his duties of competence, diligence, and communication and that Mrs. Stewart's interest in Bonner Escrow constituted an impermissible conflict of interest. Warner also alleged that Stewart breached his duty of loyalty to Warner in one or both of two ways: (1) Stewart breached his duty to a current client (Warner) by representing Warner as a seller while simultaneously representing the Simplicios as buyers, and/or that, (2) Stewart breached his duty to a former client (Warner) by representing subsequent purchasers of the apartment property. The Complaint alluded to Warner's erroneous belief that Stewart had not given the Bares a copy of the escrow agreement in order to "cover up" the fact that he had been negligent in obtaining the Simplicios' signatures on the 1984 escrow documentation. Warner alleged Stewart had committed various acts of fraud and that he had impermissi-

bly contacted a person represented by counsel. The last allegation is not an issue on review. Finally, Warner hinted that Stewart had committed a defamatory act by sending the Bares a copy of a letter in which he called Warner a "jerk."

Warner's Complaint with the ISB was delegated to an intake coordinator who is not an attorney. The intake coordinator discussed the Complaint with Warner on November 12, 1992; December 3, 1992; and June 8, 1993. She concluded that Warner had not suffered any financial injury, that Stewart had been hired by the Simplicios, and that Stewart did not have an attorney-client relationship with Warner. She also concluded that Warner had no standing to assert any claimed conflicts of interest that might only involve subsequent purchasers. On June 8, 1993, she advised Warner by phone that there was no apparent violation of the Idaho Rules of Professional Conduct.

On June 9, 1993, Warner wrote to the ISB reiterating his position but received no written reply. In December of 1993 he complained to the Supreme Court about Idaho State Bar Counsel, Michael Oths, for his office's handling of the Stewart Complaint and alleged various ethical violations by Oths. The Complaint against Oths was assigned to a hearing committee pursuant to I.B.C.R. 508(b).

The Oths Hearing Committee concluded that: (1) no attorney-client relationship exists between the Office of Bar Counsel and a grievant and, therefore, allegations made by Warner against Oths having to do with the attorney-client relationship were without merit; (2) Oths had not violated any Rule of Professional Conduct apart from the attorney-client relationship; and (3) it lacked jurisdiction to examine Oths' conduct as the administrator of the Office of Bar Counsel. The Oths Hearing Committee criticized the ISB's failure to issue a final decision in writing and its failure to respond to Warner's letters, but found no disciplinary violation.

Warner wrote to Oths on June 20, 1994, and later to the Clerk of the Idaho Supreme Court expressing his belief that the underlying Stewart Complaint was still unresolved and that Oths should disqualify himself from

its review. Oths advised Warner that he believed the Stewart Complaint lacked merit. Oths also advised Warner of the right to appeal any decision made by the ISB and, therefore, did not feel it was necessary to disqualify himself.

Warner appealed the dismissal of the Stewart Complaint to a hearing committee. The Stewart Hearing Committee issued a Memorandum Decision in which it affirmed the disposition of the case but did not issue formal Finding of Facts.

On May 5, 1995, Warner again wrote to the Idaho Supreme Court, stating that both of the Hearing Committees which reviewed his appeals were biased against him and had advanced various "cover-ups" by the ISB and Stewart. He claimed that the Committees had obstructed justice and were "negligent" in conducting their reviews. This correspondence has been treated as a Petition for Review by the Idaho Supreme Court of both Hearing Committee Decisions. Stewart requests attorney fees pursuant to section 12–121 of the Idaho Code.

## II.

## THE STEWART COMPLAINT

### A. Jurisdiction and Standard of Review

■ A grievant may seek direct review by the Court of hearing committee decisions involving investigations by the Office of Bar Counsel. I.B.C.R. 509(c)(8),(9). *See Idaho State Bar v. Eliasen,* 128 Idaho 393, 395, 913 P.2d 1163, 1165 (1996); *Idaho State Bar v. Daw,* 128 Idaho 80, 82, 910 P.2d 752, 754 (1996). The grievant has the burden of proving by clear and convincing evidence that an attorney has violated a disciplinary rule. *Daw,* 128 Idaho at 82, 910 P.2d at 754. The Court gives great weight to the findings of discipline committees although it is not bound by them. *In re Lutz,* 100 Idaho 45, 48, 592 P.2d 1362, 1365 (1979); *In re Jenkins,* 127 Idaho 408, 414, 901 P.2d 1309, 1315 (1995); *Daw,* 128 Idaho at 82, 910 P.2d at 754. The Court will make an independent examination of the facts to determine if the decision below is supported by the evidence. *In re Malmin,* 126 Idaho 1024, 1026, 895

P.2d 1217, 1219 (1995); *In re Jenkins,* 120 Idaho 379, 383, 816 P.2d 335, 339 (1991). It is the petitioner's burden to show that the hearing committee's decision is clearly erroneous or arbitrary and capricious. I.B.C.R. 509(c)(9); *In re Williams,* 126 Idaho 839, 843, 893 P.2d 202, 206 (1995); *Matter of Jenkins,* 120 Idaho at 383, 816 P.2d at 339 (1991).

### B. The Responsibility of Bar Counsel to Review Complaints

█ Bar Counsel has the responsibility of investigating "all matters involving possible misconduct called to [his] attention...." I.B.C.R. 504(b)(2). "Professional conduct" is defined as all "conduct which occurs within or without the attorney-client relationship which constitutes misconduct or conduct reflecting on the lawyer's fitness to practice law." I.B.C.R. 501(m). A "grievant" is defined as one who "files in the office of Bar Counsel a written statement alleging that a lawyer has engaged in misconduct." I.B.C.R. 501(i). There is no requirement that a grievant show financial or other injury to file a complaint with the Bar. *Runsvold v. Idaho State Bar,* 129 Idaho 419, 421, 925 P.2d 1118, 1120 (1996). Similarly, proof of client-status is not a general threshold filing requirement. However, as the Oths Hearing Committee properly determined, there are rules which deal with the relationship between the attorney and the client and there are also rules that apply to the conduct of an attorney apart from an attorney-client relationship. Warner made allegations of a variety of ethical violations including Rules: 1.1, 1.3, 1.4, 1.7., 1.9, 4.1, 4.4 and 8.4(c). Rules 1.1, 1.3, 1.4, 1.7 and 1.9 deal with the attorney-client relationship, and Warner must demonstrate that such a relationship existed to show a violation of these Rules. Rules 4.1, 4.4 and 8.4 do not deal exclusively with the attorney-client relationship. A complaint involving them is not unfounded because it is filed by a non-client. I.B.C.R. 509(a)(1).

### C. No Attorney–Client Relationship Existed Between Warner and Stewart.

The Stewart Hearing Committee did not make Findings of Fact.[1] Therefore, it is unclear whether the members based their decision to affirm dismissal of the Stewart Complaint in part on the conclusion that no attorney-client relationship existed or simply that Stewart had not violated any of the Rules of Professional Conduct. This Court will conduct an independent review of the record.

█ Whether an attorney-client relationship exists is a question of fact. *Stuart v. State,* 118 Idaho 932, 934, 801 P.2d 1283, 1285 (1990); *O'Neil v. Vasseur,* 118 Idaho 257, 262, 796 P.2d 134, 139 (Ct.App.1990). Warner did not pay Stewart's fees but claims that payment is not determinative of the existence of an attorney-client relationship, arguing that the client's subjective belief should be the principal factor in such a finding. Warner claims the fact Stewart maintained a client index file on him, as well as Stewart's alleged failure to rebut Warner's use of the phrases "our attorney" and "your alleged client" show that his belief an attorney-client relationship existed was reasonable.

This Court has not addressed the appropriate test for determining whether an attorney-client relationship exists. Some courts have held that the controlling factor is the client's subjective belief which is reasonable under the circumstances. *See In re Anonymous,* 655 N.E.2d 67, 70 (Ind.1995); *People v. Bennett,* 810 P.2d 661, 664 (Colo.1991); *Teja v. Saran,* 68 Wash.App. 793, 846 P.2d 1375, 1376–77 (1993); *In re Weidner,* 310 Or. 757, 766, 801 P.2d 828, 837 (1990); *Breuer–Harrison, Inc. v. Combe,* 799 P.2d 716, 727 (Utah App.1990). Other courts have construed the attorney-client relationship in more strict contractual terms, finding that no attorney-client relationship exists absent clear assent by both the putative client and attorney. *International Tele–Marine Corp. v. Malone & Assocs. Inc.,* 845 F.Supp. 1427, 1431 (D.Colo.1994); *Waggoner v. Snow,*

---

1. Although one committee member documented the basis of his vote in a letter to the Idaho State Bar, the record does not reflect whether the other members of the Hearing Committee joined in that member's reasoning.

*Becker, Kroll, Klaris & Krauss,* 991 F.2d 1501, 1506 (9th Cir.1993); *Schmidt v. Frankewich,* 819 P.2d 1074, 1077 (Colo.App. 1991) (attorney-client relationship may be implied, but parties must agree upon all essential contract terms as a manifestation of their mutual assent).

In *Podolan v. Idaho Legal Aid Servs., Inc.,* 123 Idaho 937, 854 P.2d 280 (Ct.App.1993), the Idaho Court of Appeals determined that no express contract existed creating an attorney-client relationship between the parties. Whether such a contract could be implied depended upon "whether the intent to make the contract may be fairly inferred from the facts." 123 Idaho at 942, 854 P.2d at 285. Warner's claim of an attorney-client relationship fails under either test. There was no express agreement between Warner and Stewart establishing the relationship for the transactions in this case, and there is no basis to imply an agreement. Any subjective belief by Warner that Stewart was his attorney is not reasonable.

Stewart's client index files cannot be the basis for Warner to claim a reasonable subjective belief that Stewart was his attorney in the transactions involved because he did not know that Stewart maintained an index file on him until long after his original Complaint was filed with the ISB. Stewart denies that he ever represented Warner with regard to the apartment property, and in a letter dated September 24, 1992, he rebutted Warner's characterizations of him as "our attorney" or that Warner was "[Stewart's] alleged client," saying: "I have not represented your interest in any legal matters and/or closings in more than 7 (seven) years." Warner is correct that payment of Stewart's fee is not determinative, *Stuart v. State,* 118 Idaho at 934, 801 P.2d at 1285, but payment is evidence that an attorney-client relationship exists. *Id.* Warner paid no fees. Others paid Stewart's fees. Except for representation by Stewart in the past on unrelated matters, there is nothing that would indicate to a reasonable person that an attorney-client relationship existed.

The evidence offered by Warner that an attorney-client relationship existed does not rise to the level of clear and convincing regardless of the test this Court utilizes. There was no express agreement. The facts do not support implication of an agreement. A reasonable person would not believe an attorney-client relationship existed. The Hearing Committee's Decision with respect to Rules 1.1, 1.3, 1.4, 1.7 and 1.9 is affirmed.

**D. Stewart Did Not Violate I.R.P.C. 4.4, Respect for the Rights of Third Persons, by Sending the Bares a Copy of the Letter in Which he Called Warner a "Jerk."**

Idaho Rule of Professional Conduct 4.4 provides:

> *In representing a client,* a lawyer shall not: (a) use means that have no substantial purpose other than to embarrass, delay, or burden a third person. . . .

I.R.P.C. 4.4 (emphasis added).

██ Warner claims that Stewart intended to "bully both parties" into settling their differences, by sending the Bares a copy of the letter in which he referred to Warner as a "jerk." What Warner means by this is unclear. By the time Stewart sent this letter, the Bares had already paid the escrow fee, and they were no longer the focus of Warner's animosity. Although Mrs. Bare had written to Warner saying that she had contacted a lawyer to look over the documents relating to the apartment property, she had given Warner no indication that she would take legal action of any kind.

Beyond this, I.R.P.C. 4.4 contemplates acts by a lawyer in the course of "representing a client." Stewart responded to a rash and cutting letter written by Warner impugning both Stewart and his wife's professional abilities and scruples. Stewart was not "representing a client." He gave a personal response to a personal affront.

Based on the language and purpose of I.R.P.C. 4.4, Warner's allegation is not well-founded, and the Hearing Committee's Decision on this issue is affirmed.

**E. Stewart Did Not Violate I.R.C.P. 8.4 by Defrauding Warner.**

Idaho Rule of Professional Conduct 8.4 provides: "It is professional misconduct for a

lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation." I.R.P.C. 8.4(c). "Fraud" is "conduct having a purpose to deceive and not merely negligent misrepresentation or failure to appraise another of relevant information." I.R.P.C. Terminology.

██ Warner alleges that some type of fraud was committed in the following respects: (1) by Bonner Escrow "improperly collect[ing] escrow fees from the 1988 buyer, Faletto and default fees from Bare", (2) by the Simplicios alleged false representation to Warner that he would receive full escrow services, and (3) because the Bares incurred expenses due to default action taken by Bonner Escrow at Warner's direction. Warner also claims that Stewart did not "earn" the fees paid to him by the Simplicios and that Stewart somehow committed fraud by having knowledge of his wife's alleged fiduciary duty owed to Warner via her connection with Bonner Escrow.

Warner uses the term "fraud" loosely. He need not state his allegations of fraud with the particularity required by I.R.C.P. 9(b), but his evidence must show by clear and convincing evidence that Stewart had a purpose to deceive. I.R.P.C. Terminology. Nothing shows that Stewart's purpose was to deceive. The Hearing Committee's Decision on this issue is affirmed.

**F. The Decision of the Oths Hearing Committee Was Not Clearly Erroneous or Arbitrary and Capricious.**

The Oths Hearing Committee determined that Warner did not receive formal notice of the disposition of the Stewart Complaint apart from his telephone conversation with the intake coordinator on December 8, 1992, and that it would have been "helpful if more formalized communication processes . . . had occurred." However, the Hearing Committee determined that it lacked the jurisdiction to examine issues relating to administration of the Office of Bar Counsel. The Hearing Committee also concluded that no attorney-client relationship exists between a grievant and Bar Counsel, therefore, Oths did not violate any Idaho Rule of Professional Conduct dealing with the attorney-client relationship. Further, it found that Oths did not violate any Rule of Professional Conduct apart from the attorney-client relationship. We give great weight to such findings on review. *In re Lutz*, 100 Idaho at 48, 592 P.2d at 1365; *Idaho State Bar v. Daw*, 128 Idaho at 82, 910 P.2d at 754.

██ Warner argues that Oths violated I.R.P.C. 1.1, *Competence* and I.R.P.C. 1.3, *Diligence*. Both of these rules address duties owed to "clients." There was no attorney-client relationship between Warner and Bar Counsel. The Oths Hearing Committee's Decision is affirmed with respect to these allegations.

Warner asserts that Oths violated I.R.P.C. 3.3(a), *Candor Towards the Tribunal*, based on Oths' failure to assure the accuracy of the intake coordinator's Memorandum and apparently because Oths did not make some comment to the Hearing Committee regarding the intake coordinator's handling of the case. Rule 3.3 of the Idaho Rules of Professional Conduct provides:

A lawyer shall not *knowingly*:

(1) make a false statement of *material* fact or law to a tribunal;

(2) fail to disclose a *material* fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

. . . .

(4) offer evidence that a lawyer *knows* to be false. If a lawyer has offered *material* evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

I.R.P.C. 3.3(a) (emphasis added).

██ Warner has not made any argument that the intake coordinator's Memorandum was materially misleading—only incomplete in detailing the full range of ethical violations alleged. The Oths Hearing Committee was aware that the Stewart case had been delegated to a non-lawyer staff member. In addition, the Oths Hearing Committee had before it the many letters Warner had written documenting his extensive list of grievances against both Stewart and Oths. Oths

did not misrepresent any material fact or otherwise violate I.R.P.C. 3.3.

Warner's next allegation is that Oths violated I.R.P.C. 5.3, *Responsibilities Regarding Non-lawyer Assistants.* The Oths Hearing Committee found that Oths has supervisory duties as administrator of the Bar Counsel's Office and that these were outside of the purview of its review. Idaho Rule of Professional Conduct 5.3(b)(1) applies to lawyers who know, ratify, or order specific conduct of "such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer." I.R.P.C. 5.3(b)(1). The intake coordinator took no action that would constitute an ethical violation if taken by a lawyer, and it is unnecessary to reach whether Rule 5.3 applies to Bar Counsel.

 Warner alleges that Oths violated I.R.P.C. 8.4 of the Idaho Rules of Professional Conduct in a number of ways including: (1) engaging in a "prolonged cover-up operation" concerning the closing of the Stewart case, (2) "deliberately with[holding] a right of appeal to Warner," (3) requiring Warner to prove "material adversity" before investigating, (4) failing to recuse himself from the Stewart case after a complaint had been filed against him, (5) attempting to "interfere" with the possible appeal of the Stewart case, and (6) taking steps to prevent the Oths Hearing Committee from deciding administrative issues. The record does not reflect any evidence that Oths intended to or did interfere with either Hearing Committees' review or in any way interfered with Warner's pursuit of either case. In fact, Oths assisted Warner by sending him information about filing a complaint and explained Warner's right to appeal.

 Warner also alleges that Oths violated Rule 8.4(c) of the Idaho Rules of Professional Conduct by responding to an inquiry by the Oths Hearing Committee on whether there is an attorney-client relationship between Bar Counsel and grievant. Idaho Bar Commission Rule 508, provides that a hearing committee may "[r]equire Bar Counsel to make a response". I.B.C.R. 508(b)(2). Oths and the Hearing Committee acted within the scope of the Rules.

 Warner alleges that Oths violated Rule 8.4 of the Idaho Rules of Professional Conduct by failing to notify Warner that the Stewart case had been closed. The Oths Hearing Committee criticized Bar Counsel's failure to notify Warner but found that it lacked jurisdiction to examine administrative duties of Bar Counsel.

Idaho Bar Commission Rule 509(b) provides: "Bar Counsel shall give written notice to the grievant and to the defendant of his or her disposition of matters under Rule 509(a), stating the reasons for the action taken." I.B.C.R. 509(b). Oths' failure to give notice pursuant to I.B.C.R. 509(b) does not rise to the level of violating I.R.P.C. 8.4(d).

## G. The Hearing Committees Were Not Biased Against Warner.

It is the grievant's burden to prove by clear and convincing evidence that an attorney has violated a disciplinary rule. *Daw,* 128 Idaho at 82, 910 P.2d at 754. Warner's alleged complaints of negligence "cover-up," and bias on the part of the two Hearing Committees leads this Court to evaluate whether the record shows clearly and convincingly such bias existed.

### 1. The Stewart Hearing Committee

 Warner alleges the Stewart Hearing Committee was biased against him because it furnished copies of letters accompanying its disposition to Stewart but not Warner. Idaho Bar Commission Rule 509(c)(7) provides that the Hearing Committee "shall enter an appropriate order reflecting its decision and file the same with the Clerk of the Professional Conduct Board who shall then serve the order upon grievant, defendant and Bar Counsel." I.B.C.R. 509(c)(7). Warner does not argue that he did not receive service of the Stewart Hearing Committee Decision. He is entitled to a copy of the Decision pursuant to I.B.C.R. 509(c)(7). Instead, Warner argues that he did not receive copies of the letters which accompanied that Decision. He is not entitled to the letters under the Rules, and he presents no evidence that he requested and was prejudiced by being denied copies of those letters in preparation

for review by this Court. Warner has failed to meet his burden on the charge that the Stewart Hearing Committee was biased against him.

### 2. The Oths Hearing Committee

Warner alleges that the Oths' Hearing Committee was biased against him because:

a) it requested Oths to comment on whether an attorney-client relationship exits between a grievant and Bar Counsel;

b) it did not force Oths to prove he had the legal authority to delegate to a non-lawyer clerk; and

c) it accepted the intake coordinator's Memorandum into evidence without verifying its contents.

 Idaho Bar Commission Rule 508(b) provides that the Hearing Committee may consider a complaint against Bar Counsel "on the basis of the complaint" I.B.C.R. 508(b)(1); and/or "[r]equire Bar Counsel to make a response;" I.B.C.R. 508(b)(2); and/or "[t]ake such other steps as are necessary to facilitate the prompt resolution of the complaint." The Oths Hearing Committee was authorized by the Rules to require a response from Oths concerning the Complaint. Showing that the Hearing Committee was doing what it was authorized to do does not show bias.

No reasonable person could read bias into the Oths Hearing Committee's failure to force Oths to prove he had legal authority to delegate to a non-lawyer clerk. A hearing committee is not required to waste its time or the time of the participants.

Warner's objection to the intake coordinator's Memorandum is not that it is incompetent in the evidentiary sense nor that it is false. He claims its contents have not been verified. That assertion is irrelevant to the claim of bias. Warner has failed to meet his burden on the charge that the Oths Hearing Committee was biased against him.

## III.

### ISSUE ON CROSS–REVIEW

 On cross-review Stewart asks for award of attorney fees pursuant to Rule 41 of the Idaho Appellate Rules and section 12–121 of the Idaho Code. Section 12–121 of the Idaho Code provides for the award of attorney fees in "civil action." Warner's petition for review is not a "civil action" contemplated by that section. No alternative basis for an award has been argued. The request for an award of attorney fees pursuant to I.A.R. 42 is denied.

## IV.

### CONCLUSION

The Decisions of the Hearing Committees are affirmed. The respondents are awarded costs.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.