(No. 5691. April 20, 1931.)

J. H. ANDERSON and MARY ANDERSON, Respondents,
v. J. C. CARRIGAN and MARY L. CARRIGAN,
Appellants.

[298 Pac. 673.]

P. C. O'Malley, for Appellants.

John W. Peter and H. J. Swanson, for Respondents.

BUDGE, J.—One Spiro owned in fee certain lots in the city of Pocatello. On August 23, 1923, Clark entered into a written agreement with Spiro to purchase the lots, on a partial payment plan. The agreement was in the usual form, containing a forfeiture clause and a provision that all payments, upon Clark's failure to carry out the terms of the contract, should be applied as rent. The agreement was filed of record. On March 1, 1924, Clark and his wife entered into an agreement to sell to Carrigan and his wife an undivided one-half interest in the lots covered by Clark's agreement with Spiro. The agreement between the Clarks and Carrigans was practically the same as that between Spiro and Clark. The later agreement was not filed of record. The consideration that the Carrigans were to pay to Clarks was $2,500, of which $302.12 was paid at the time the agreement was entered into, the balance to be paid in monthly instalments. There was a mortgage upon the premises for $1500 which was assumed by the Clarks and Carrigans in equal proportions. The agreement further provided that interest should be first paid out of monthly

instalments upon the mortgage debt, next interest on the deferred payments and the balance on the deferred payments.

The Carrigans made payments on their one-half interest in the property to Clark until November 15, 1924, when the Clarks executed and delivered to the Carrigans a quitclaim deed to their interest in the lots. This deed was not filed of record. December 16, 1924, Spiro executed and delivered a warranty deed to the lots to the Pocatello Loan & Realty Company, hereinafter referred to as the realty company. On the same date the Clarks made and executed a quitclaim deed to the realty company and at the same time, in writing, assigned the contract between them and the Carrigans to the realty company, which company assumed all of the obligations in the contract to be performed by the Clarks. The Carrigans made monthly payments to the realty company for a period of over five years. During this time the realty company paid the $1500 mortgage and remortgaged the property. Respondents became mortgagees of the lots under a mortgage executed by the realty company. Later the realty company conveyed all of the lots, except two, to respondents in satisfaction of their mortgage.

This action was brought by respondents against the Carrigans to recover delinquent unpaid instalments agreed to be paid by them under their contract with the Clarks, of which respondents are now the owners by assignment. Upon the trial a warranty deed executed by the realty company covering a one-half interest in the two lots heretofore mentioned was tendered into court for the use and benefit of the Carrigans to be delivered to them upon their compliance with the terms of their agreement with the Clarks.

There is no question raised as to the balance due from the Carrigans, no dispute regarding the delinquent instalments, nor is any question raised as to the ability of respondents, upon compliance with the terms of their contract by the Carrigans, to deliver to the latter a good and sufficient warranty deed to a one-half interest in the lots.

After conveyance of the lots to respondents by the realty company, appellants refused to make any further payments under their contract with the Clarks.

The trial court awarded judgment in favor of respondents and against the Carrigans in the sum of $166.25, being the amount of instalments due and unpaid, and further adjudged that the total amount remaining due on their contract was $1990.31, and that said sum was payable at the rate of $18.85 a month. From the judgment this appeal is taken.

Appellants urge that they are not bound under the terms of their agreement with the Clarks for the reason that the Clarks, prior to the execution and delivery of their quitclaim deed to the realty company, had executed and delivered to appellants a quitclaim deed to all of their interest in the lots. This deed was not of record and there is no proof which shows or tends to show that respondents or their predecessors had notice or knowledge of the giving of the quitclaim deed to appellants. The record conclusively shows that appellants continued making payments after the execution of the quitclaim deed to them by the Clarks, with the same regularity as prior thereto and that they made regular payments to respondents' predecessor year after year without regard to the fact that they held a quitclaim deed. No consideration appears to have been given for the quitclaim deed from the Clarks to appellants, and it affirmatively appears that appellants never considered it as modifying their agreement with the Clarks. In such circumstances there is no merit in the contention that the giving of the quitclaim deed by the Clarks to appellants absolved the latter from any of the conditions contained in their agreement to purchase a one-half interest in the property from the Clarks that could be urged to defeat recovery by respondents in this action.

Nor would it seem that there is any merit in appellants' contention that the agreement between the Clarks and themselves was not assignable, and that therefore the realty company was without authority to assign said con-

tract to respondents. This was but a contract to purchase real estate which by its terms was assignable. The general rule would seem to be that where a contract is assignable the assignee acquires all the rights of the assignor and takes the contract subject to all of the obligations of the assignor therein stipulated. (39 Cyc., p. 1663, sec. 5.) Thus it would seem that Spiro, the original feeholder, although having an outstanding contract to sell the lots to Clark, had the right to convey the lots by deed to the realty company subject to the Clark contract, which was done. Under their contract with the Clarks, appellants were thereupon obligated to pay monthly instalments as they became due to the realty company which accepted the quitclaim of the Clarks subject to appellants' contract. Appellants recognized this and made monthly payments to the realty company. The latter conveyed its title by warranty deed to respondents subject to the Clark-Carrigan contract. Thus it would seem respondents were entitled to receive the monthly payments from appellants, and stood in the same relation to them that the realty company had theretofore occupied.

Neither are we of opinion that appellants are in a position to complain of the payment of the mortgage of $1500 on the lots by the giving of subsequent mortgages by the realty company and the ultimate conveyance by said company in satisfaction of the mortgage held by respondents, since it is undisputed that respondents are ready, able and willing to carry out the terms of the contract between the Clarks and appellants and to execute and deliver to the latter a warranty deed to a one-half interest in the lots upon payment of the amount contracted to be paid and in the manner as stipulated in the agreement of appellants with the Clarks. As stated in respondents' brief, we know of no law which prevents the owner of an undivided interest in land from selling such interest to any person; and that is especially true when the contract is by its terms made binding upon the heirs, executors, administrators and assigns of the respective parties.

From what has been said it follows that the judgment should be affirmed, and it is so ordered; costs to respondents.

Lee, C. J., and Givens, Varian and McNaughton, JJ., concur.