301 P.2d 1103

**FIRST NATIONAL BANK IN EVANSTON,
a National Corporation, Plaintiff-
Appellant,**

v.

**Kenneth J. SIMS, Defendant-Respondent.**

**No. 8435.**

Supreme Court of Idaho.

Oct. 2, 1956.

Joseph McFadden, Hailey, for appellant.

288

C. V. Boyatt, Arco, for respondent.

SMITH, Justice.

August 25, 1954, appellant brought this action against respondent to recover a judgment of $3,100.88 principal, together with interest, allegedly owing and due on a promissory note.

Respondent by answer, while admitting the execution of the note, denied that he owed any sum thereunder and set up the defense of novation; also counterclaimed in offset of any alleged balance by him owed on the note.

The case was tried to a jury. Appellant's motion for a directed verdict was denied. Verdict was returned in favor of respondent and judgment entered accordingly.

Appellant thereupon moved for judgment notwithstanding the verdict and for a new trial, both of which motions the trial court denied. Appellant has perfected an appeal from the order denying its motion for a new trial.

The promissory note in the principal sum of $4,000 was dated January 2, 1953, although it appears to have been executed sometime during the first week in March, 1953.

Prior to the time of execution of said note respondent and his brother M. A. Sims operated as a co-partnership Sims Motor Company in Evanston, Wyoming. The brothers dissolved the partnership during December, 1952. Respondent thereupon operated Sims Motor Company as a sole propietor and, needing money to operate the business, borrowed $4,000 from

appellant bank January 2, 1953, and executed and delivered his promissory note to appellant, evidencing the loan.

Respondent continued to operate Sims Motor Company as sole proprietor until March, 1953, when he sold the business to his brother M. A. Sims and to Andrew B. O'Hara, as co-partners. Respondent, at that time by written instrument, assigned all credits and accounts receivable owing to the business, and all of its assets, to the new partnership; also at said time he went to appellant bank and as maker executed a new $4,000 promissory note payable on demand, with M. A. Sims and Andrew B. O'Hara as indorsers. The note provided for interest at the rate of 5½% per annum until maturity, and 10% thereafter under Wyoming law, until paid.

Between March 9 and October 1, 1953, M. A. Sims and Mr. O'Hara made seven payments, each of $150, on the aforesaid new promissory note, prorated to interest and principal, which left a balance of principal sum of $3,100.88 owing on October 1, 1953.

Shortly after respondent sold his business as aforesaid, he moved to Idaho. Appellant bank commenced suit in Uinta County, Wyoming, against respondent, M. A. Sims and Andrew B. O'Hara on the last aforesaid promissory note but was unable to serve respondent personally with summons in the State of Wyoming, but served summons personally on the other two defendants in said action. Appellant as a result of said action obtained a judgment on said note against M. A. Sims and Andrew B. O'Hara in the principal sum of $3,100.88, together with interest and attorneys fees. Appellant bank thereafter commenced this action on said note against respondent in the State of Idaho.

Appellant by its appeal presents the question of insufficiency of the evidence to justify the verdict.

■ Respondent, concerning the alleged novation, failed to show the acceptance on the part of appellant bank of the promise of M. A. Sims and Andrew B. O'Hara, successors in interest of respondent in Sims Motor Company, to pay the balance of said promissory note, in satisfaction of respondent's obligations to appellant under said note, in substitution of respondent's promise to pay the same. Respondent, in that regard, admitted that appellant bank, operating through its vice-president Mr. Bradbury, refused to release him from the original obligation, his testimony being:

"Mr. Bradbury got a new note out and he said, 'Well, I don't think I will take you off it, but I will see that they pay each month—pay off.' So I signed a new note.

\*     \*     \*     \*     \*     \*

"When he [Bradbury] refused to take me off it was quite a shock to me— * * *. On this new note we were making over to these boys [M. A. Sims and Andrew B. O'Hara]."

Mr. Bradbury of appellant bank testified:

"Mr. Sims asked me if he could be relieved of the obligation on the note. I told him that I didn't feel that it was wise for the bank to do that, but that I would allow the succeeding firm, that is M. A. Sims and Andrew O'Hara, to pay the note according to payments that had been agreed to prior to that time * * *; and so, Mr. Sims leaving I wanted to obtain a new note as this other original note that we had at that time was due on July 2nd; and knowing that it would be difficult to get renewal notes from Mr. Sims when he lived in Arco, Idaho, I made out a new note for four thousand dollars, dating back to January 2nd, nineteen-fifty-three, made the note payable on demand; and told Kenneth Sims that he could have the two succeeding partners indorse the note * * * and as long as payments were made that we would continue to carry the note; but that he was a good liability and a good responsibility to see that the note was paid for in event of a default.

*    *    *    *    *    *

"Q. What was done with the first note dated January 2nd, nineteen, fifty-three in the amount of four thousand dollars? A. That was given to Kenneth Sims."

It thusly appears that an essential element of novation was wholly lacking, i. e., there was no assent whatever by appellant bank, the creditor, that respondent debtor be released.

Novation requires the assent of all the parties. The original debtor must be fully discharged and the debt as to him extinguished. Mere knowledge and consent of the creditor that a third party assume the debt will not release the original debtor. It must appear that the creditor agreed to release the original debtor. Independent School Dist., Class A, No. 1, in Cassia County v. Porter, 39 Idaho 340, 228 P. 253; Gibbs v. Christensen, 47 Idaho 658, 277 P. 814; Exchange Lumber & Mfg. Co. v. Thomas, 71 Idaho 391, 233 P.2d 406. The taking of collateral security or the promise of a third party does not effect a novation, since a creditor may accept money or performance of a contract from a third party without releasing the original debtor. Pimental v. Marques, 109 Cal. 406, 42 P. 159; Redewill v. Matzenauer, 32 Ariz. 13, 255 P. 486; 66 C.J.S., Novation, § 2, pp. 682–683.

Respondent, by way of counterclaim, alleged that appellant bank "has

attached and liquidated accounts receivable" belonging to respondent which he believed to be in excess of $4,500, in respect to which he prayed an accounting.

The agreement, whereby respondent and his wife, retiring partners, transferred Sims Motor Company to Milford A. [M. A.] Sims and wife, and Andrew B. O'Hara and wife, incoming partners, was admitted in evidence without objection. The agreement recites in effect that respondent and wife, retiring partners, assigned and transferred to the incoming partners and their assigns, all right, title and interest to credits, contracts and assets of the business; also respondent and his wife, retiring partners, empowered the incoming partners to collect all credits and other contracts of the business and to discharge the same.

Respondent, when questioned concerning his allegation of assignment of accounts receivable to appellant bank, admitted that he did not make such an assignment and never delivered any list of accounts receivable to the bank, but delivered the list to Mr. O'Hara, an incoming partner. M. A. Sims testified that respondent assigned all the accounts receivable of the business to the incoming partners; also, that one of the considerations for M. A. Sims' and Mr. O'Hara's indorsing the new note was respondent's assignment of the accounts receivable of around $4,500 to them, the incoming partners.

The evidence is insufficient to sustain respondent's counterclaim.

The evidence, being entirely insufficient to support respondent's said defenses, or either of them, the trial court should have granted appellant's motion for a directed verdict.

The disposition of the case renders it unnecessary to consider the appealability of the trial court's order denying appellant's motion for judgment notwithstanding the verdict.

The judgment of the trial court is reversed, and the cause remanded with instructions to enter judgment on said promissory note in favor of appellant, including reasonable attorneys fees as provided by said note. Costs to appellant.

TAYLOR, C. J., and KEETON, PORTER and ANDERSON, JJ., concur.