## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 37035

DAVID and SHIRLEY FULLER, a married couple )
)
)
  Plaintiffs-Appellants-Cross Respondents, )
)
v. )
)
DAVE CALLISTER, an individual )
CONFLUENCE MANAGEMENT, LLC, an )
Idaho limited liability company, and )
LIBERTY PARTNERS, INC., an Idaho )
corporation, )
)
  Defendants-Respondents-Cross )
  Appellants. )

Boise, April 2011 Term

2011 Opinion No. 51

Filed: May 6, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge.

District court order granting summary judgment, vacated.

Davison, Copple & Copple, Boise, for appellants. Edward J. Guerricabeitia argued.

Michael R. Jones, PLLC., Boise, for respondents. Michael R. Jones argued.

_____

BURDICK, Justice

This case comes before this Court on appeal from a grant of summary judgment in favor of David Callister, Confluence Management, LLC ("CM") and Liberty Partners, Inc. ("LP") (collectively, "Respondents"). On appeal David Fuller and Shirley Fuller (the Fullers) argue that the district court erred, as a matter of law, in finding that: (1) the doctrine of merger prevented the Fullers from enforcing an addendum to a purchase and sale agreement, where there had been a subsequent warranty deed conveying the property that was the subject of the purchase and sale agreement; (2) an assignment of all rights under the purchase and sale agreement from CM to LP, which the Fullers consented to, relieved CM of all obligations or liabilities arising under that

1

purchase and sale agreement; and (3) David Callister, as an individual, should be dismissed from the lawsuit as it was never alleged that he acted outside of his capacity as a corporate representative (where this issue was raised by the court *sua sponte*)[1]. Respondents cross-appeal, arguing that the district court erred in finding that Respondents were not entitled to attorney fees under I.C. § 12-120(3).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 20, 2005, CM entered into a Commercial/Investment Real Estate Purchase and Sale Agreement ("Purchase Agreement") with the Fullers, to acquire approximately 12.73 acres of property adjacent to Ten Mile Road in Meridian, Idaho. At the time the Purchase Agreement was entered into Ada County Highway District (ACHD) was attempting to acquire part of the property for a right-of-way in order to expand Ten Mile Road. On September 20, 2005, after entering into the Purchase Agreement, the Fullers and CM executed an addendum to the Purchase Agreement ("Addendum #1") wherein CM agreed that it would deed over a portion of the property to ACHD and transfer the proceeds of such conveyance to the Fullers. Under Addendum #1 the Fullers retained the right to negotiate the purchase price with ACHD.

On September 22, 2005, CM assigned the Purchase Agreement to LP, with the consent of the Fullers. On the same day, the Fullers executed a warranty deed conveying the property to LP; the warranty deed contained no mention of an anticipated condemnation or of Addendum #1. On August 10, 2006, LP entered into a Sale and Purchase Agreement with ACHD, and issued a warranty deed conveying approximately 1.43 acres of the property purchased from the Fullers to ACHD. ACHD paid $83,921 for this property. The Fullers requested that LP turn these funds over to the Fullers pursuant to Addendum #1 of the Purchase Agreement, but LP refused.

On October 21, 2008, the Fullers filed suit against CM, LP and Callister, alleging, *inter alia*, that CM and Callister breached the Purchase Agreement. On June 23, 2009, the Fullers brought a Motion for Partial Summary Judgment, and after both parties briefed the issues raised in that motion, oral argument was held on July 20, 2009. On August 24, 2009, the district court issued a Memorandum Decision and Order on Plaintiffs' Motion for Partial Summary Judgment ("Memorandum Decision") finding that: (1) the Purchase Agreement and Addendum #1 merged into the warranty deed and were no longer enforceable; (2) CM assigned all rights and

---

[1] Although the Fullers appealed this issue and argued it in their briefing before this Court, they subsequently waived the issue regarding the dismissal of Callister at oral argument. As such we shall not consider this issue.

2

responsibilities under the Purchase Agreement to LP and was no longer liable to the Fullers; and (3) Callister should be dismissed as a party.

On September 28, 2009, the district court entered a Judgment consistent with the Memorandum Decision. The Judgment dismissed Count 1 of the Fullers' Amended Complaint (breach of contract claim against Callister and CM) on the basis that: (1) the district court found at summary judgment that the Purchase Agreement had been merged into the warranty deed; and (2) the district court had found that the assignment of the Purchase Agreement from CM to LP relieved CM from any obligations under the Purchase Agreement. The Judgment dismissed Count 2 of the Fullers' Amended Complaint (unjust enrichment against LP) on the basis that it found there was an enforceable express contract. As the two causes of action dismissed by the district court were the only claims brought by the Fullers, the court entered summary judgment in favor of Respondents on all claims. The Fullers filed their notice of appeal on October 9, 2009.

## II. ISSUES ON APPEAL

1. Whether the district court erred in finding that the Purchase Agreement and Addendum #1 had merged into the subsequently executed warranty deed and granting summary judgment on that issue.

2. Whether the district court erred in finding that the assignment of the Purchase Agreement from CM to LP, with the consent of the Fullers, removed all liabilities and obligations of CM pursuant to that agreement.

3. Whether the district court erred in failing to grant attorney fees to Respondents under I.C. § 12-120(3), having found that the gravamen of this legal action was not a commercial transaction, and whether Respondents are entitled to attorney fees on appeal on the same basis. Or whether, in the alternative, the Fullers are entitled to attorney fees on appeal pursuant to I.A.R. 40 and 41 and paragraph 17 of the Purchase Agreement.

## III. STANDARD OF REVIEW

As this Court noted in *Castorena v. General Electric*:

> When reviewing an order for summary judgment, the standard of review for this Court is the same standard as that used by the district court in ruling on the motion. Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. This Court exercises free review over questions of law.

149 Idaho 609, 613, 238 P.3d 209, 213 (2010) (quoting *Vavold v. State*, 148 Idaho 44, 45, 218 P.3d 388, 389 (2009)).

In *Harwood v. Talbert*, this Court wrote:

> The district court may grant summary judgment to a non-moving party even if the party has not filed its own motion with the court. A motion for summary judgment allows the court to rule on the issues placed before it as a matter of law; the moving party runs the risk that the court will find against it . . . .
>
> In instances where summary judgment is granted to the non-moving party, this Court liberally construes the record in favor of the party against whom summary judgment was entered. The party against whom the judgment will be entered must be given adequate notice and an opportunity to demonstrate why summary judgment should not be entered. It is also true that a district court may not decide an issue not raised in the moving party's motion for summary judgment.

136 Idaho 672, 677–78, 39 P.3d 612, 617–18 (2001) (internal citations omitted) (internal quotation omitted).

## IV. ANALYSIS

The first issue is whether all provisions of the Purchase Agreement and Addendum #1 were merged into the executed warranty deed. The second issue is whether the assignment of the Purchase Agreement from CM to LP relieved CM of all obligations thereunder. Third and finally, whether Respondents should have been granted attorney fees before the district court, and whether either party is entitled to attorney fees on appeal. These issues shall be addressed in turn.

**A. The Purchase Agreement, and Addendum #1 thereto, were not merged into the executed warranty deed.**

The district court found that the Purchase Agreement and Addendum #1 merged into the subsequent warranty deed. The Fullers argue that the reservation of ACHD right-of-way proceeds did not inhere to the same subject matter as the deed, and thus should not have been deemed merged.

Addendum #1 to the Purchase Agreement is identified as a continuation of paragraph #10[2] of the Purchase Agreement (titled "Other Terms and/or Conditions") and provides, *inter alia*:

---

[2] It is interesting to note that the "boilerplate language" in paragraph 10 of the Purchase Agreement states that "[t]his Agreement is made subject to the following special terms, considerations and/or contingencies which *must be satisfied prior to closing*". If Addendum #1 is truly a continuation of paragraph 10 of the Purchase Agreement, it may be argued (as Respondents *do* argue) that the fact that the anticipated condemnation did not occur prior to closing effectively eliminates the continuing force of Addendum #1, regardless of merger. However, lines 32–35 of Addendum # 1 state that "[t]o the extent the terms of this ADDENDUM modify or conflict with any provisions of the Purchase and Sale Agreement including all prior Addendums and Counter Offers, these terms shall control. . . .

4

3. Seller to receive any and all funds paid for road right of way including land, landscaping, fencing, sprinklers and temporary easements.

Escrow instructions by the title company will cover the receipt and disbursement of the right of way funds. It is understood that buyer will be deeding the right of way to ACHD and that the seller, Dave and Shirley Fuller will receive all of said funds paid by ACHD. Said amount has not yet been determined and Dave and Shirley Fuller retain the right to negotiate the amount with ACHD.

The warranty deed executed by the Fullers for the benefit of LP does not mention any reservation of right-of-way proceeds on behalf of the Fullers. The district court found that, although the Fullers argued that the relevant provision of Addendum #1 dealt only with money (the ACHD proceeds), "the term is the right of alienation of the property, the proceeds from the sale of a portion of the greater tract of real property to ACHD." The court concluded that the right of alienation of property inhered to the same subject matter as the warranty deed and therefore merged.

In *Jolley v. Idaho Securities*, *Inc.*, the Jolleys agreed to trade their Lemhi County ranch and farming machinery for the Saratoga Hotel owned by Idaho Securities, Inc. 90 Idaho 373, 378, 414 P.2d 879, 881 (1966). Pursuant to that agreement the parties stipulated who would be responsible for respective financial obligations existing on the properties (mortgages, tax liens, etc.), and it was agreed that each party would provide the other with an abstract of title to the respective properties. *Id*. at 378–79, 414 P.2d at 881–82. After this agreement was entered into, and the respective warranty deeds were executed and recorded, the Jolleys sought an abstract of title to the Saratoga Hotel, but that abstract was never delivered. *Id.* at 380, 414 P.2d at 882. The Jolleys subsequently failed to make payments on the mortgage on the Saratoga Hotel (which they were obligated to do under the agreement), the mortgage was foreclosed on, and a receiver took possession of the Saratoga Hotel. *Id*. The Jolleys filed suit against Idaho Securities, and a cross-claim was filed. *Id.* at 382, 414 P.2d at 884. The relevant issue on appeal before this Court was whether the agreement obligating each party to provide an abstract of title had been merged into the executed warranty deeds. *Id*.

This Court provided the following explanation of the merger doctrine as it applies to a real estate purchase agreement and deed:

Upon its execution by both parties, this agreement is made an integral part of the aforementioned Agreement." Thus, to the extent the boilerplate language in paragraph 10 of the Purchase Agreement conflicts with Addendum #1, Addendum #1 is controlling. Furthermore, interpreting the Purchase Agreement as Respondents advocate would be contrary to the clear intent of the parties in adopting Addendum #1, as it was technically impossible for the buyer to transfer title to ACHD prior to closing, since the buyer would not yet have had title.

5

> [T]he acceptance of a deed to premises generally is considered as a merger of the agreements of an antecedent contract into the terms of the deed, and any claim for relief must be based on the covenants or agreements contained in the deed, not the covenants or agreements as contained in the prior agreement.

*Id.* However, "[t]here is a generally recognized exception to the foregoing rule which exception relates to collateral stipulations of the contract, which are not incorporated in the deed." *Id.* If a stipulation makes reference to title, possession, quantity or emblements of land it will generally be considered to inhere to the subject matter of a warranty deed, and shall be considered merged and, thus, not a collateral stipulation. *Id.* at 383, 414 P.2d at 885. Although a grantee may accept a delivery of deed as a full performance of a prior contract, even where not all of the prior contract's provisions were complied with, where those contractual provisions are collateral stipulations there is no presumption that any party intended to give up the benefit of such covenants, and this is a question of intent. *Id.* at 384, 414 P.2d at 885. Noting that an abstract of title does not relate to the title, possession, quantity or emblements of the land, the *Jolley* Court concluded that the agreement to furnish an abstract was a collateral stipulation that was not merged through acceptance of the warranty deed. *Id.* at 385, 414 P.2d at 886.

In *Sells v. Robinson*, the Sells (Seller) and Robinson (Buyer) entered into a Real Estate Purchase and Sale Agreement ("REPSA"), two relevant terms of which were: "[(1)] Seller to grant an all-inclusive easement on that portion of Sellers' remaining land located north and west of the northeast corner of parcel being sold. . . . [and; (2)] *Timber rights on said easement are also included*." 141 Idaho 767, 770, 118 P.3d 99, 102 (2005) (emphasis in the original). Subsequently the Sells executed a warranty deed conveying the property to Robinson; the legal description for the warranty deed described the granted easement as follows:

> ALSO TOGETHER WITH an easement over and across a portion of the remaining lands of the grantors lying North of the above described tract and West of the Northerly extension of the East line of said tract for the purpose of ingress, egress access to the existing creek, recreational and *for removal of the timber located thereon*.

*Id.* (emphasis in the original). Robinson interpreted both the REPSA and warranty deed as granting him timber rights over the ten acres of the Sells' property that was subject to the easement, and proceeded to log that property. *Id.* The Sells filed suit, arguing that the warranty deed only gave Robinson the right to remove trees from the access road, for the purpose of widening that road. *Id.* The relevant issue on appeal was whether the terms of the REPSA, related to the easement and timber rights, were merged into the executed warranty deed. This

6

Court noted the general doctrine of merger—that "[w]here the right claimed under the contract would vary, change, or alter the agreement in the deed itself, *or inheres in the very subject-matter with which the deed deals, a prior contract covering the same subject-matter cannot be shown as against the provisions of the deed*." *Sells,* 141 Idaho at 772, 118 P.3d at 104 (quoting *Jolley*, 90 Idaho at 382, 414 P.2d at 884) (alteration in the original) (emphasis added) (internal quotation marks omitted). In upholding the district court's determination that the REPSA merged into the warranty deed, this Court found that "the terms of the REPSA Robinson seeks to enforce 'inhere in the very subject-matter with which the deed deals'—the timber on the Sells' remaining property. The timber language in the REPSA does not constitute a collateral agreement relating to timber rights, independent of the terms of the deed." *Sells*, 141 Idaho at 772, 118 P.3d at 104.

The Fullers contend that there are several reasons why the district court erred in finding that the reservation of condemnation proceeds affected the right of alienation of property and thus inhered to the same subject matter as the warranty deed. First, the Purchase Agreement was a personal agreement between the Fullers and CM and/or its assigns, and if the property had been resold prior to the condemnation the Fullers would have had no recourse. Second, property is always at risk of being condemned through eminent domain; this does not impact the right of alienation.

Next the Fullers argue that the parties necessarily intended for paragraph 3 of Addendum #1 to control after the execution of the warranty deed. Where it is clear that the parties did not intend for a provision in a real estate contract to merge with a subsequently executed warranty deed, that provision shall not be deemed merged. As stated in the American Law Reports:

> In all cases where there are stipulations in a preliminary contract for the sale of land, of which the conveyance itself is not a performance, the true question must be whether the parties have intentionally surrendered those stipulations. The evidence of that intention may exist in or out of the deed. If plainly expressed in the very terms of the deed, it will be decisive. If not so expressed, the question is open to other evidence; and in the absence of any proof on the subject there is no presumption that either party, in giving or accepting a conveyance, intended to give up the benefit of covenants of which the conveyance was not a performance or satisfaction. . . . It is clear that the rule of merger does not apply where the plain intent of the parties is that a covenant in a contract should not be merged in the subsequently executed deed.

A.G. Shepard, Annotation, *Deed as Superseding, or Merging, Provisions of Antecedent Contract Imposing Obligations Upon the Vendor*, 84 A.L.R. 1008 (1933). By the very nature of the

obligation established in Addendum #1, it is clear that the parties expected that provision to continue in effect after the execution of the warranty deed. Addendum #1 requires that the buyer deed over a right-of-way to ACHD. If the transfer of the right-of-way was expected to occur prior to the buyer's acquisition of the property the buyer would not need to be involved in the transfer of deed for that right-of-way. Where the relevant conditions of a contract could not have been performed prior to execution of the warranty deed, merger is inappropriate. *See id*. ("[W]here a deed constitutes only part performance of an executory contract for the conveyance of land, leaving other matters for future performance, it does not constitute the entire contract, and stipulations as to future matters are not merged therein."). *See also Christiansen v. Intermountain Ass'n of Credit Men*, 46 Idaho 394, 398, 267 P. 1074, 1075 (1928) ("Where the covenants in the contract do not relate to the conveyance, but are collateral to and independent of the conveyance, they are not merged in the deed, in so far as the deed is only a part performance of the contract.").

Finally the Fullers argue that the reservation of proceeds was collateral and independent of the conveyance of the deed as it dealt only with money. The reservation of the potential condemnation proceeds was part of the consideration for the property, and the provision should properly be viewed as a portion of the purchase price. The Fullers cite to the case of *McGovern Builders, Inc. v. Davis*, for the proposition that terms pertaining to the consideration to be paid for a real estate transaction are not merged into a subsequently executed deed. 468 N.E.2d 90, 92 (Ohio Ct. App. 1983) ("[W]ritten agreement between the vendor and vendee for the sale, purchase and conveyance of land is not executed by, and merged in the deed, as to the stipulations of the vendee therein concerning the consideration . . . and such written agreement is competent evidence to show the actual consideration." (quoting *Conklin v. Hancock*, 66 N.E. 518, 518 (Ohio 1903))).

The district court erred in finding that paragraph 3 of Addendum #1 implicated the alienation of property. We find nothing in the provision that suggests that CM or its assign could not freely reconvey that property. The provision was thus personal to the parties involved. Based on the language of Addendum #1 and the clear intent of the parties that the condition expressed in paragraph 3 would occur after the execution of the warranty deed, as well as the fact that the reservation of condemnation proceeds is properly viewed as part of the consideration for the sale, we find that the doctrine of merger does not apply here.

8

**B. The district court erred in finding that the assignment of the Purchase Agreement from CM to LP, with the consent of the Fullers, removed all of CM's liabilities and obligations under the Purchase Agreement.**

The Fullers argue that the district court erred in finding that the assignment of the Purchase Agreement from CM to LP entirely relieved CM of all obligations and liabilities under the Purchase Agreement.

The district court cited only one case in support of its ruling on this issue, quoting the following from *Van Berkem v. Mountain Home Development Co.*: "The general rule would seem to be that where a contract is assignable the assignee acquires all the rights of the assignor and takes the contract subject to all of the obligations of the assignor therein stipulated." 132 Idaho 639, 641, 977 P.2d 901, 903 (Ct. App. 1999) (quoting *Anderson v. Carrigan*, 50 Idaho 550, 555, 298 P. 673, 674 (1931)). Although true, the quoted statement stands for the proposition that the assignee is subject to the obligations that the assignor initially assumed, not that the assignment relieves the assignor of those obligations.

American Jurisprudence makes the following distinction between assignments and other transfers:

> Not every transfer of an interest is an assignment. An assignment is a voluntary act, unlike a court order directing an involuntary transfer of property, interests or rights. While an assignment is a formal transfer of property or property rights, "subrogation" is an equitable remedy in which one steps into the place of another and takes over the right to a claim for monetary damages to the extent that the other could have asserted it. A "novation" is the substitution of a new contract for an existing one. A novation differs from an assignment because it requires the assent of all parties, while an assignment generally requires neither the knowledge nor the assent of the obligor, and because an assignment cannot change the obligor's performance. An assignment is not a debt; it is a full payment for something now, even though receipt of part of the value may occur in the future. An assignment is a formal transfer of property or property rights from one to another, while a waiver is the intentional relinquishment of a known right.

6 Am.Jur.2d *Assignments* § 2 (2010) (footnotes omitted). The key distinction between an assignment and a novation is further elucidated in the following observation found in 58 Am.Jur.2d *Novation* § 2 (2010):

> A party to a contract may not assign an obligation so as to avoid liability on the contract and shift liability to the assignee, *unless the assignee assumes the obligation of the assignor with the consent of the other party to the contract and the latter releases the assignor from further liability*; in such case there is a novation. "Assumption" and "substitution" do not mean the same thing; although the latter term may strongly imply an intent to release the old debtor upon the new

> debtor's involvement, the former term carries no such implication, that is, substitution connotes assumption plus release, but assumption does not necessarily imply release.

(Emphasis added) (footnotes omitted). *See also First Nat'l Bank in Evanston v. Sims*, 78 Idaho 286, 290, 301 P.2d 1103, 1105 (1956) ("Novation requires the assent of all the parties. . . . Mere knowledge and consent of the creditor that a third party assume the debt will not release the original debtor. It must appear that the creditor agreed to release the original debtor.").

The transfer of interest at issue here took place in the Addendum to the Purchase Agreement executed September 20, 2005, which states, in full: "The undersigned sellers and buyers agree to the following: 1. The buyers of said property will be assigned to vest as Liberty Partners Inc. All other terms and conditions shall remain the same." This assignment does not purport to release CM of its obligations under the Purchase Agreement; there is no basis to believe that the Fullers intended for the addendum to constitute a novation.

Respondents argue that, even if CM remains liable under the Purchase Agreement, there are still conditions precedent to CM's liability under paragraph 3 of Addendum #1 that were not satisfied. However, this is beyond the scope of the appeal. The issue before this Court is whether the district court erred in granting summary judgment to Respondents, in part based on the finding that the assignment of the Purchase Agreement to LP removed all obligations that CM had under the Purchase Agreement, not whether CM breached the Purchase Agreement. We find that the district court erred as a matter of law in granting summary judgment to Respondents on the issue of novation, as there was no clear acceptance of a novation by the Fullers. The issue of whether CM is liable for a breach of the Purchase Agreement is an issue that will be determined at trial on remand.

**C. Attorney fees.**

As we find that the district court erred in granting summary judgment in favor of Respondents, the question of whether the district court erred in denying Respondents attorney fees under I.C. § 12-120(3) is moot, as Respondents are no longer the prevailing party below. Likewise, Respondents are not the prevailing party on appeal.

The Fullers request attorney fees and costs on appeal pursuant to paragraph 17 of the Purchase Agreement. Paragraph 17 of the Purchase Agreement states: "ATTORNEY FEES: If either party initiates or defends any arbitration or legal action or proceedings which are in any way connected with this Agreement, the prevailing party shall be entitled to recover from the

non-prevailing party reasonable costs and attorney's fees, including such costs and fees on appeal." The Fullers did not bring a cause of action against LP pursuant to the Purchase Agreement; therefore, LP is not liable for any attorney fees or costs under the contract. The Fullers have not appealed the district court's dismissal of their claim of unjust enrichment against LP. At oral argument the Fullers waived their appeal on the district court's dismissal of Callister as a party. The only party who may be liable for attorney fees is CM. However, because other defenses have not been addressed in the trial court, this Court cannot decide who ultimately will be the prevailing party for purposes of applicable attorney fees and costs. *See Bagley v. Thomason*, 149 Idaho 799, 804–05, 241 P.3d 972, 977–78 (2010) (noting that where attorney fees are authorized by statute or contract, but the prevailing party cannot be determined on an appeal before this Court, and the case is being remanded to the trial court, that court will be permitted to award the prevailing party attorney fees for the appeal). The trial court is to take the issue of attorney fees and costs for this appeal into consideration when it addresses all fees and costs at the conclusion of the case.

## V. CONCLUSION

We find that the district court erred in finding that Addendum #1 to the Purchase Agreement merged into the subsequently executed warranty deed, as to the issue of the reservation of the proceeds from the ACHD condemnation. Likewise, the district court erred in ruling that there was a valid novation relieving CM from its liability under that Purchase Agreement. We vacate the district court's judgment and remand for proceedings consistent with this opinion.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**

11