## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 42921

| | | |
|---|---|---|
| H-D TRANSPORT, an Idaho partnership; and VINT LEE HUGHES, | ) ) ) | |
| | ) | Boise, January 2016 Term |
| Plaintiffs-Appellants- Cross Respondents, | ) ) | 2016 Opinion No. 67 |
| | ) | |
| v. | ) | Filed: June 28, 2016 |
| | ) | |
| MICHAEL D. POGUE, an individual; LAWSON & LASKI, PLLC, a professional limited liability company; and LAWSON & LASKI, PLLC, dba LAWSON LASKI CLARK & POGUE, PLLC, | ) ) ) ) ) ) | Stephen Kenyon, Clerk |
| | ) | |
| Defendants-Respondents- Cross Appellants. | ) ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County.  Hon. John K. Butler, District Judge.

The district court's grant of summary judgment in Pogue's favor is <u>affirmed</u>. The district court's denial of Pogue's request for attorney fees under Idaho Code section 12-120(3) is <u>reversed</u>. The case is <u>remanded</u> for further proceedings consistent with this opinion.

Jones & Swartz, PLLC and Learned Lawyer, PLLC, Boise, for appellants.  Eric B. Swartz argued.

Hepworth, Janis & Kluksdal, Boise, for respondents.  John J. Janis argued.

_____

HORTON, Justice.

Vint Lee Hughes, and H-D Transport, an Idaho partnership, appeal the grant of summary judgment by the district court for Blaine County, in favor of Michael D. Pogue and Lawson & Laski, PLLC (collectively Pogue) in a legal malpractice action. Hughes and H-D Transport brought suit against Pogue claiming that at various points starting October 21, 2011, until present, Pogue had an attorney-client relationship with both Hughes and H-D Transport.

1

The district court granted summary judgment, holding that there was no evidence that an attorney-client relationship existed between Pogue and Hughes and/or H-D Transport. Following the district court's entry of judgment, Pogue requested attorney fees under Idaho Code section 12-120(3). The district court denied the request for attorney fees, reasoning that the gravamen of the action was not fundamentally related to a commercial transaction. Hughes and H-D Transport appeal from the grant of summary judgment. Pogue cross-appeals the denial of the request for attorney fees. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August of 2011, Hughes and Andrew Diges entered into a 50-50 partnership, under the name H-D Transport, to haul hydraulic fracturing fluid. Hughes contributed money to the partnership and Diges contributed his experience. The partners did not create a written partnership agreement. Sometime prior to October 21, 2011, disagreements arose between the partners concerning the operation and finances of the partnership. On October 21, 2011, Diges hired Michael D. Pogue, an attorney with Lawson, Laski, Clark & Pogue, PLLC, to draft a formal partnership agreement. Diges told Hughes that he had hired an attorney to prepare a partnership agreement, and on November 21, 2011, Pogue, Hughes and Diane Barker, the partnership bookkeeper, participated in a conference call regarding the partnership. As noted by the district court:

> The substance of this conversation is not part of the record. However, on this same day Diane Barker sent an email to Pogue and attached financial information concerning the Partnership. In her email she states that it is her "… hope this provides a clear picture to all parties so that they may work on a partnership agreement..." and that there are "important tax implications that will come into play with a memorialized partnership agreement." Diane Barker is also suggesting to Pogue that the Partnership should seek the advice of a "tax professional" in connection with the preparation of a partnership agreement.

Despite the efforts to create a partnership agreement, on November 28, 2011, Pogue, on behalf of Diges, sent Hughes a letter "regarding the problems and irregularities concerning the operation of H-D Transport, and to propose a wind-up of the business." The letter outlined two options for splitting the partnership assets, instructed Hughes to select one option, and demanded that Hughes reply on or before December 2, 2011. Regardless of which option Hughes selected, the letter stated that Diges would retain the right to use the name H-D Transport. Hughes states that he did not receive the letter until around December 3, 2011.

On December 2, 2011, Pogue filed a complaint requesting declaratory relief, an accounting, and a dissolution of the partnership (the Dissolution Action). In the complaint, Pogue named H-D Transport and Diges as the plaintiffs and Hughes as the defendant. On January 3, 2012, Hughes filed an answer and counterclaim naming H-D Transport and Hughes as counterclaimants and Diges as counterdefendant. Following trial of the Dissolution Action, the district court entered findings of fact and conclusions of law which largely decided issues in Hughes' favor. Diges was ordered to repay H-D transport more than $50,000, including $1,500 in partnership funds for legal fees paid to Pogue. The district court specifically found that Pogue received partnership funds for services performed for Diges personally, rather than the partnership. Judgment was entered on March 10, 2014.

On October 21, 2013, following trial, but prior to the district court's decision in the Dissolution Action, Hughes and H-D Transport filed the present action naming Pogue and his firm as defendants. The complaint alleged two counts of professional negligence and breach of fiduciary duty and two counts of unreasonable restraint of trade under the Idaho Competition Act, Idaho Code sections 48-101 to 48-118. On April 24, 2014, Pogue filed his answer. On September 22, 2014, Pogue moved for summary judgment, arguing that Hughes and H-D Transport's claims of professional negligence, breach of fiduciary duty, and unreasonable restraint of trade all failed as a matter of law. Pogue also asserted that collateral estoppel, judicial estoppel and the litigation privilege barred the claims.

On November 14, 2014, the district court granted Pogue's motion for summary judgment on all claims. The district court concluded that Hughes and H-D Transport failed to establish that an attorney-client relationship existed with Pogue.

Following the district court's decision, Pogue filed a motion seeking attorney fees pursuant to Idaho Code sections 12-120(3), 12-121, and 12-123. The district court denied Pogue's motion, reasoning that the action was not fundamentally related to a commercial transaction.

Hughes and H-D Transport timely appealed, and Pogue timely cross-appealed.

## II. STANDARD OF REVIEW

"When reviewing an order for summary judgment, the standard of review for this Court is the same standard as that used by the district court in ruling on the motion." *Intermountain Real Props., LLC v. Draw, LLC*, 155 Idaho 313, 316–17, 311 P.3d 734, 737–38 (2013). Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Fuller v. Callister*, 150 Idaho 848, 851, 252 P.3d 1266, 1269 (2011) (quoting *Castorena v. General Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010)). "However, the nonmoving party cannot rely on mere speculation, and a scintilla of evidence is insufficient to create a genuine issue of material fact." *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 152 Idaho 632, 637, 272 P.3d 1263, 1268 (2012). "If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Conway v. Sonntag*, 141 Idaho 144, 146, 106 P.3d 470, 472 (2005).

## III. ANALYSIS

On appeal, Hughes and H-D Transport argue that the district court erred by failing to apply the appropriate standard to determine the existence of an attorney-client relationship and that there is a genuine issue of material fact as to the existence of an attorney-client relationship between Pogue and both Hughes and H-D Transport. Pogue cross-appeals the district court's denial of the request for attorney fees.

**A. The district court applied the correct standard to determine the existence of an attorney-client relationship.**

The district court determined that both H-D Transport and Hughes failed to establish that an attorney-client relationship existed with Pogue. The district court reasoned that Hughes had the burden to establish that Pogue engaged in conduct that could reasonably be construed as indicating that the parties agreed to establish an attorney-client relationship.

Hughes contends that the district court inappropriately augmented the standard found in *Berry v. McFarland*, 153 Idaho 5, 278 P.3d 407 (2012), and the analysis the district court should have applied was: "(1) Did Pogue agree to provide assistance, or engage in conduct that could reasonably be construed as agreeing to assist; or (2) Were the circumstances such that Pogue (a) Failed to clarify whom he represented; and thus (b) H-D Transport and Mr. Hughes reasonably believed that Pogue was their attorney?"

In *Berry v. McFarland*, we explained the rules concerning the formation of an attorney-client relationship, the scope of the attorney-client relationship, and the duration of the attorney-client relationship:

> As a general rule, no attorney-client relationship exists absent assent by both the putative client and attorney. An attorney-client relationship can be

4

established when the attorney is sought for assistance in matters pertinent to his or her profession. *If the attorney agrees to provide assistance, or engages in conduct that could reasonably be construed as so agreeing, then there is an attorney-client relationship.* The scope of the representation depends upon what the attorney has agreed to do. If the client consults with the attorney, the relationship terminates upon the completion of the consultation unless the attorney agrees to continue the relationship or to undertake a specific matter for the client. If the attorney agrees to undertake a specific matter, the relationship terminates when that matter has been resolved. If the attorney agrees to handle any matters the client may have, the relationship continues until the attorney or client terminates the relationship.

*There are also circumstances in which the existence of an attorney-client relationship can exist based upon the attorney's failure to clarify whom the attorney is representing where, under the circumstances, one of the parties could reasonably believe that the attorney is representing that person's interests.* Thus, the attorney-client relationship also exists if the attorney has represented the client in a variety of matters over a period of time and the attorney is asked to perform services in connection with a matter in which the client is involved, unless the attorney clearly informs the client that the attorney is not representing the client with respect to that matter. Likewise, where an attorney has represented a closely held business entity and then provides legal services for a transaction involving that entity and its owners where their interests are adverse, the attorney must clearly inform all involved who is the attorney's client and inform the others to seek independent legal advice.

153 Idaho at 9–10, 278 P.3d at 411–12 (emphasis added) (internal quotations and citations omitted). Our holding in *Berry* followed a discussion of the decision in *Warner v. Stewart*, 129 Idaho 588, 930 P.2d 1030 (1997):

In *Warner,* we noted two lines of authority from other jurisdictions as to the appropriate test for determining whether an attorney-client relationship exists. Some courts have held that the controlling factor is the client's *subjective belief which is reasonable under the circumstances.* Other courts have construed the attorney-client relationship in more strict contractual terms, finding that no attorney-client relationship exists absent clear assent by both the putative client and attorney. In *Warner* we did not resolve the issue, finding that there was no attorney-client relationship under either test.

*Berry*, 153 Idaho at 9, 278 P.3d at 411 (emphasis added) (internal citations and quotations omitted).

In its decision, the district court explained that this Court settled on an appropriate test in *Berry*:

The Court in *Berry v. McFarland*, *supra*, recognized that, "[i]f the attorney agrees to provide assistance, or engages in conduct that could reasonably be construed as so agreeing, then there is an attorney-client relationship." Under this circumstance could Hughes reasonably believe that Pogue represented his

5

interests as concerns himself or the Partnership? In assessing the reasonableness of one's belief a totality of the circumstances analysis is appropriate with both a subjective and objective component.

Hughes' argument that the district court erroneously augmented the standard is not supported by the record; the district court's decision correctly articulated and applied the standard set forth in *Berry*.

**B. It was not reasonable for Hughes to believe that he had an attorney-client relationship with Pogue.**

The district court concluded that Hughes failed to establish that an attorney-client relationship existed between himself and Pogue. The district court explained that there was neither evidence nor any claim in the record that there was any express agreement between Hughes and Pogue. Thus, the district court reasoned that any attorney-client relationship would have to have been based upon an implied-in-fact contract. Based on the rule pronounced in *Berry*, the district court considered: "(1) Subjectively, did Hughes have a good faith belief that Diges hired Pogue and Pogue agreed to represent not only Diges' interest but also the interests of Hughes and the Partnership?; (2) Objectively, was the belief of Hughes reasonable in light of the facts and record presented?"

Answering these questions, the district court explained that the evidence in the record showed that the "relationship between Diges and Hughes was very strained and that there was a great deal of distrust between the two of them." Further, the district court reasoned that while Pogue had participated in a telephone conference with Hughes and the partnership's bookkeeper, there was no evidence in the record as to the contents of that conversation or why that would lead Hughes to reasonably believe that Pogue was representing his interests or the interests of H-D Transport. Finally, the district court noted that Hughes himself admitted that on November 21, 2011, the same day as the telephone conference, Hughes "became aware that Pogue only represented the interests of Diges . . . ." The district court concluded that it was not "subjectively or objectively reasonable for Hughes to believe that Pogue was his attorney or representing his interest under the circumstances . . . ." On appeal, Hughes argues that the district court erred in the standard it applied and that a genuine issue of material fact exists as to the existence of an attorney-client relationship.

 "As a general rule, no attorney-client relationship exists absent assent by both the putative client and attorney." *Berry*, 153 Idaho at 9, 278 P.3d at 411. However, "[i]f the attorney

6

agrees to provide assistance, or engages in conduct that could reasonably be construed as so agreeing, then there is an attorney-client relationship." *Id.*

There is no evidence in the record of an express agreement between Hughes and Pogue. The question then becomes whether Pogue engaged in conduct that Hughes could have reasonably construed as an agreement to form an attorney-client relationship. Hughes contends that he and Diges were partners, not adversaries, and that he reasonably believed that Diges hired Pogue to represent H-D Transport, Hughes, and Diges in drafting a partnership agreement. Specifically, Hughes points to Diges' testimony:

Q. Did you tell Mr. Hughes that you were going to have a partnership agreement drafted?

A. I think we talked about it.

Q. But both of you were interested in memorializing a formal agreement; would that be fair?

A. Yeah.

Q. Would a formal agreement have ended some of the problems that you guys were having as a partnership?

A. It might have.

Q. Would that agreement define more specifically some of the understanding between you and Mr. Hughes about the partnership?

A. It could have.

The record does not support Hughes' claim. In the letter he sent to Hughes on November 28, 2011, Pogue outlined a number of points of ongoing conflict between the two partners and claimed that Hughes' wife had slandered Diges, accusing him of embezzlement and marital infidelity. Indeed, in the Dissolution Action, Hughes' memorandum in support of a motion to add punitive damages recounted:

When the two partners returned from North Dakota on or about October 12, 2011, the pressures of learning what it took to operate their new Partnership began to mount. Further, Messrs. Hughes and Diges' spouses were pressing both Mr. Diges and Mr. Hughes to reign in the other partner's conduct. Mr. Diges accused Mr. Hughes of taking too much money out of the Partnership and failing to pay bills. Mr. Hughes accused Mr. Diges of taking too much money out of the Partnership.

In short, the record shows hostility and conflict in the relationship between Hughes and Diges before Pogue entered the picture.

Hughes argues that the telephone conference with Pogue and the partnership's bookkeeper supports his claim that he reasonably believed that Pogue was his attorney and

attorney for H-D Transport. Again, the record does not support Hughes' claim. There is only one piece of evidence in the record regarding the telephone conference between Hughes, Pogue, and the partnership's bookkeeper: an email the bookkeeper sent to Pogue later the same day. The email contained an attachment with financial information concerning H-D Transport and stated, "I hope this provides a clear picture to all parties so that they may work on a partnership agreement that ensures the continued success of the operation." Nothing else in the record provides any further information concerning this telephone conference or why it supports Hughes' claim that he reasonably believed that Pogue was acting as his attorney or that of the partnership.

In support of his claim, Hughes advances a contention and poses a question: "No one shares their private financial information with just anyone. Why would H-D Transport and Mr. Hughes allow Pogue to access their financial information if they believed Pogue was not working for them?" Although the record does not supply an answer, we note the obvious potential answer to this question is that Idaho law required such access. Idaho Code section 53-3-403(b) provides, in pertinent part, that "[a] partnership shall provide partners and their agents and attorneys access to its books and records."

Finally, Hughes argues that on November 21, 2011, he did not learn that Pogue was only representing Diges and not Hughes or H-D Transport; rather, Hughes contends, "Mr. Hughes testified that he had heard from someone that Pogue was not protecting his interest. Mr. Hughes did not hear, believe, or testify that he <u>knew</u> that Pogue was not his attorney." (emphasis original). The record does not support Hughes' claim. Hughes testified:

> [HUGHES]: This was dated November 22nd, right? This is actually a date that's very infamous in the timing of the disclosure that you [Pogue] were not actually representing H-D Transport the partnership. Prior to this date, the 21st of November is when it was actually disclosed to me by another individual who we were working with that you truly were *not representing H-D Transport the partnership and was individually representing Mr. Diges.*

Hughes' testimony is unambiguous; no later than November 21, 2011, Hughes was aware that Pogue represented Diges, not him or the partnership. We find no error in the district court's conclusion that it was not reasonable for Hughes to believe that he had an attorney-client relationship with Pogue.

**C. It was not reasonable for Hughes, on behalf of H-D Transport, to believe that an attorney-client relationship existed between Pogue and the partnership.**

The district court found that there was no genuine issue of material fact as to whether it was reasonable for Hughes to believe that Diges hired Pogue as attorney for H-D Transport. In its analysis, the district court considered evidence that Diges initially paid Pogue with $1,500 of H-D Transport funds; however, the district court determined that the characterization of those payments as personal payments in the Dissolution Action collaterally estopped Hughes and H-D Transport from relying on that evidence to support their claims. The district court further noted that, because Hughes was unaware that Pogue was paid with H-D Transport's money, the source of the funds could not have been a basis for a reasonable belief that Pogue represented H-D Transport. Despite the fact that Pogue identified H-D Transport as a plaintiff in the Dissolution Action, the district court concluded:

> [T]he mere fact that Pogue named the Partnership as a plaintiff in the dissolution action does not suggest that Pogue was the attorney for the Partnership on or before November 21, 2011 when Hughes learned that Pogue was only representing Diges. In the dissolution action all parties agreed that the Partnership was a nominal party and further, Hughes had his own attorney, Ben Worst, who named the Partnership as a counterclaimant in the dissolution action. On or before November 21, 2011 it was not reasonable for Hughes to believe that Pogue was the Partnership attorney.

On appeal, Hughes argues that: "In this instance, the only voice for H-D Transport is Mr. Hughes who, through his observation of Pogue's conduct, reasonably believed that Pogue was dissolution counsel for H-D Transport – both in the lawsuit, and outside of the lawsuit advising on dissolution." Hughes contends: "For the same reasons that Mr. Hughes' beliefs as to the nature of Mr. Pogue's legal representation were reasonable, the beliefs of H-D Transport remain reasonable as well."

Based on the above discussion of whether it was reasonable for Hughes to believe that Pogue was hired to represent Hughes and H-D Transport, Hughes is wrong in this assertion. The district court did not err when it concluded that it was not reasonable for Hughes to believe that Pogue represented H-D Transport.[1]

**D. The district court erred when it denied Pogue's request for attorney fees under Idaho Code section 12-120(3).**

We have held:

---

[1] Because we affirm on this basis, we do not consider Pogue's arguments based upon collateral estoppel and judicial estoppel.

> [T]he prevailing party may be entitled to attorney fees under § 12–120(3) in an action for legal malpractice so long as a commercial transaction occurred between the prevailing party and the party from whom that party seeks fees. A commercial transaction includes all transactions except transactions for personal or household purposes. Further, Idaho Code § 12–120(3) applies where a commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover, and thus, as long as a commercial transaction is at the center of the lawsuit, the prevailing party may be entitled to attorney fees for claims that are fundamentally related to the commercial transaction yet sound in tort.

*Reynolds v. Trout Jones Gledhill Fuhrman, P.A.*, 154 Idaho 21, 26–27, 293 P.3d 645, 650–51 (2013) (internal citations and quotations omitted). "Whether an action is based on a commercial transaction is a question of law over which this Court exercises free review." *Harris, Inc. v. Foxhollow Const. & Trucking, Inc.*, 151 Idaho 761, 778, 264 P.3d 400, 417 (2011).

On cross-appeal, Pogue argues the district court erred in denying Pogue's request for attorney fees under Idaho Code section 12-120(3). Pogue contends "the Plaintiffs throughout the underlying litigation were **claiming** that there **was** such an attorney-client relationship directly involving commercial transactions and that was among the primary issues being litigated up until the time that the Court issued its dispositive ruling." (emphasis original).

Hughes responds that (1) the district court correctly denied Pogue's request for attorney fees because it determined that no commercial transaction actually occurred between the parties; and (2) the district court correctly denied Pogue's request for attorney fees because Hughes' claims of professional negligence and breach of duty are not fundamentally related to a commercial transaction.

### 1. A claim of a commercial transaction triggers Idaho Code section 12-120(3).

Pogue argues that simply "claiming" a commercial transaction is enough to award attorney fees under Idaho Code section 12-120(3). Hughes contends that the district court must actually find a commercial transaction existed to award attorney fees. Pogue is correct.

Idaho Code section 12–120(3) is triggered when there are "allegations in the complaint that the parties entered into a commercial transaction and that the complaining party is entitled to recover based upon that transaction." *Garner v. Povey*, 151 Idaho 462, 470, 259 P.3d 608, 616 (2011). We have held that when "a party alleges the existence of a contractual relationship of a type embraced by section 12–120(3) . . . that claim triggers the application of [I.C. § 12–120(3)] and a prevailing party may recover fees even though no liability under a contract was established." *Id.* at 469, 259 P.3d at 615 (quoting *Farmers Nat. Bank v. Shirey*, 126 Idaho 63, 73,

878 P.2d 762, 772 (1994) (alteration in original)). "In other words, when a plaintiff alleges a commercial contract exists and the defendant successfully defends by showing that the commercial contract never existed, the court awards the defendant attorney fees." *Intermountain Real Properties, LLC v. Draw, LLC*, 155 Idaho 313, 320, 311 P.3d 734, 741 (2013).

Because Hughes pled that a commercial transaction existed, Idaho Code section 12-120(3) is triggered and the dispositive question is whether the commercial transaction was integral to or fundamentally related to the claims.

### 2. The gravamen of the action was fundamentally related to an alleged commercial transaction.

Pogue argues that: "At the heart of this attorney malpractice action is a commercial transaction. Briefly, Appellants claim they hired Respondents to act as their counsel for the purposes of a partnership agreement and dissolution of the H-D Transport partnership business. These transactions have nothing to do with personal or household purposes but involve a business hauling hydraulic fracturing fluid . . . ." Hughes replies that professional negligence and breach of duty sound in tort, not contract. Hughes contends that: "These claims are based upon the standard of care expected of an attorney. The foundation of the Counts here is negligence, which sounds in tort, not in contract."

In the hearing on the motion for attorney fees, the district court concluded:

> Clearly what Mr. Hughes was attempting to allege is that -- Mr. Pogue had a previous attorney/client relationship from the actions of Mr. Diges. Certainly, this Court held contrary to that. But really the underlying claim of Mr. Hughes was not that there was negligence on the part of Mr. Pogue in the preparation of the partnership agreement, but that Mr. Pogue was representing what he believed to be conflicting interest in the dissolution preceding which Mr. Hughes claims resulted in damages.

> While there may be some relationship, the Court does not find that the gravamen – or that the gravamen of the action for legal malpractice or that the actions of Mr. Pogue were fundamentally related to a commercial transaction. So based upon the facts of this case, the Court will find there was no commercial transaction upon which to base an award of attorneys' fees.

Here, Hughes' claim of professional negligence and breach of duty would not have arisen absent the claimed commercial transition. An award of attorney fees under Idaho Code section 12–120(3) is proper if "the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover." *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 728, 152 P.3d 594, 599 (2007). Thus, attorney fees may be awarded in a legal malpractice action arising from a commercial transaction. *City of McCall v. Buxton*, 146 Idaho

656, 664–65, 201 P.3d 629, 637–38 (2009). This is such a case. Pogue is entitled to an award of attorney fees incurred before the district court under Idaho Code section 12-120(3). This matter will be remanded for the district court to determine the appropriate amount of fees to which Pogue is entitled.

**E.  Pogue is entitled to attorney fees and costs on appeal.**

Both parties request attorney fees and costs pursuant to Idaho Code section 12-121. Pogue also requests attorney fees pursuant to Idaho Code section 12-120(3). Hughes has not prevailed and is not entitled to attorney fees. We hold that Pogue is entitled to attorney fees on appeal pursuant to Idaho Code section 12-120(3).

## IV. CONCLUSION

We affirm the district court's grant of summary judgment in Pogue's favor. We reverse the district court's denial of Pogue's request for attorney fees under Idaho Code section 12-120(3) and remand for further proceedings consistent with this opinion. We award attorney fees and costs on appeal to Pogue.

Chief Justice J. JONES and Justices EISMANN, BURDICK and W. JONES, **CONCUR**.